## CAUGHRON *v.* STATE.

### Opinion delivered June 26, 1911.

1. BILL OF EXCEPTIONS—CAPITAL CASES.—Under Act of May 31, 1909, providing that on appeals or writs of error to the Supreme Court where the appellant is convicted of a capital offense, "all errors of the lower court prejudicial to the rights of the appellant shall be heard and considered by the Supreme Court, whether exceptions were saved in the lower court or not," *held* that while formal exceptions need not be saved at the trial, a bill of exceptions must be presented to the presiding judge and signed and filed in order to make a record of the proceedings. (Page 467.)

2.  SAME—DENIAL OF TIME TO PREPARE.—Where a verdict in a capital case was rendered on a certain day, and a motion for new trial denied on the following day, which was the last day of the term, it was error, if the bill of exceptions would necessarily be large, to deny the accused additional time to prepare his bill of exceptions. (Page 467.)

3.  SAME—EFFECT OF DENIAL OF TIME TO PREPARE.—Where a trial judge erroneously denied to appellant, convicted of a capital offense, time to prepare his bill of exceptions, but subsequently signed a bill of exceptions which is conceded to be correct, the Supreme Court on appeal will treat such bill of exceptions as if it had been filed in time. (Page 467.)

4.  JURY—ERROR IN EXCUSING JUROR—PREJUDICE.—Error of the trial court in excusing a juror was not prejudicial where the appellant did not exhaust his peremptory challenges. (Page 468.)

5.  SAME—RIGHT TO EXCUSE FOR SICKNESS.—It was not error to excuse a juror after he had been accepted by both sides where the juror stated that he was subject to spells, and liable to be sick if confined with the jury. (Page 468.)

6.  EVIDENCE—TESTIMONY OF WITNESS AT FORMER TRIAL.—A witness in a murder case may be impeached by oral proof of contradictory statements made by him at the coroner's inquest, though the substance of his testimony was reduced to writing by the coroner. (Page 471.)

7.  HOMICIDE—EVIDENCE—OBJECTION.—One convicted of murder in the first degree cannot on appeal object to evidence that was admitted in the court below without objection. (Page 471.)

8.  SAME—BURDEN OF PROOF.—It was not error, in a prosecution for murder, to instruct the jury that, "the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the prosecution it is . sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." (Page 471.)

9.  SAME—INSTRUCTION AS TO SELF DEFENSE.—It was proper in a murder case to charge the jury: "Although you may believe that the defendant fired the first shot in necessary self defense, still if you believe the second shot was fired at a time when it was not necessary to further defend himself, then the defendant would be guilty of murder in the first degree, or murder in the second degree, or manslaughter, provided you believe that the second shot contributed in any manner to the death of the deceased." (Page 471.)

10. SAME—INSTRUCTION AS TO PREMEDITATION.—The court charged the jury, in a murder case, that "if you believe from the evidence that defendant took a position on the gallery accessible to the gun, and shot and killed the deceased pursuant to a previously formed design to kill him, then you will find him guilty of murder in the first

degree." *Held* not error, in view of the fact that other instructions embraced the idea of self defense and of an effort on defendant's part to avoid the conflict. (Page 473.)

11. Same—provocation of assault.—An instruction to the effect that one who provokes a combat with another and then kills the other cannot plead self-defense was proper in a murder case where there was no evidence tending to prove that after provoking the combat defendant sought to withdraw therefrom. (Page 473.)

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Witt & Witt, Pole McPhetrige* and *Morris M. Cohn,* for appellant.

1. Juror Hamilton should not have been excused by the court. 76 Ark. 84; Kirby's Digest, § 2360.

2. Defendant should not have been required to testify before the coroner's jury without first being informed of his right to decline to so testify and thereby be given an opportunity to elect. His evidence under the conditions could not be subject to impeachment. Kirby's Digest, § 3088.

3. The written statements of witnesses before the coroner's jury were at least *quasi* records. They would be primary proof, and until their loss was established by competent proof no secondary evidence as to their contents would be admissible. Wharton's Crim. Evidence, chap. 4, pp. 135-141; 17 Cyc. 465-471; 2 Ark. 229; 31 Ark. 411; 32 Ark. 117; 33 Ark. 539; 48 Ark. 156; Kirby's Digest, § 3139.

4. Alleged conversation inadmissible, first, because it occurred in absence of defendant, and, secondly, because immaterial.

5. Instructions numbers thirteen and thirty-three, given at appellee's request, were entirely wrong as postulates of law applicable to this case, 76 Ark. 110; 3 Wharton, Homicide, p. 487; Wharton, Crim. Law. (10 ed.), § 309; 37 Ind. 432.

6. Instructions numbers fifteen and thirty-two, given at appellee's request, were entirely abstract. The thirty-second instruction was improper.

7. Instructions numbers twenty-three and twenty-seven, given at appellee's request, presume a condition that was not justified by the facts. 93 Ark. 409, 414.

8. The court erred in refusing to give instruction number fifteen requested by the defendant.

9. The court erred in refusing to give instruction number twelve, requested by the defendant. 59 Ark. 132; 1 Wharton, Crim. Law (10 ed.), § 493; 1 Jones 190 (N .C.) ; 23 Ala. 17; 30 Cal. 312; 31 Cal. 357; 25 Gratt. (Va.) 887; 31 Miss. 504.

10. The court erred in permitting counsel for appellee, in its closing argument, to make a physical demonstration, unjustified by the facts, which was in effect the introduction of new evidence.

11. No instruction was given which told the jury that as to degree the doctrine of reasonable doubt had application as well as to the question of guilt. 85 Ark. 357, 359. Cf. Kirby's Digest, § 2386.

12. The court abused its discretion in refusing to grant time in which to file a bill of exceptions. Kirby's Digest, § § 2429-2431; § § 6222 to 6227. 5 Ark. 81, 85; 77 Ark. 417; 1 Pet. 46; 14 Am. Dig., Cent. Ed., Col. 2874, § 309; 18 Decennial Dig., pp. 1011, 1012, § 227; 106 Mo. 217, 225; 38 Ark. 283; 11 Tex. App. 110; 11 Tex. App. 148; 2 Thompson, Trials, § § 2809, 2810; 15 S. W. (Tex.) 288; 63 Ind. 327; 49 Wis. 415; 1 Wall., Jr. 137; 136 Cal. 660; 22 Neb. 145.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The court did not err in excusing the juror Hamilton. Kirby's Digest, § 2360.

2. The testimony of Bowen and Mitchell, members of the coroner's jury, relative to testimony of Maples, appellant's witness, before that body, was competent.

3. Appellee's instruction number thirteen was not prejudicial. Kirby's Digest, § 1265; 98 Ark. 430; 76 Ark. 110; 76 Ark. 515.

4. Appellee's instruction number thirty-three was good. Wharton, Homicide, (3 ed.), § 313; 60 Ark. 76; 2 Bishop's New Crim. Law, § 637; 45 Ark. 464; 28 Ark. 160.

5. Appellee's instruction number thirty-two was correct.

6. Appellee's instructions numbers twenty-three and twenty-seven are the law. 93 Ark. 414; 26 Ark. 286, 307.

7. Appellant's requested instruction number fifteen was properly refused. 93 Ark. 414; 75 Ark. 350; 69 Ark. 649; 59 Ark. 132.

8. Appellant's requested instruction number twelve was properly refused.

9. The bill of exceptions does not contain any reference to the "illustrated argument" of counsel for appellee. It was not testimony.

10. It was within the sound discretion of the trial judge as to whether or not the time should be extended for filing bill of exceptions. Secs. 2429-2431 and § § 6222-6227, Kirby's Digest; see cases cited in 5 Words and Phrases, pp. 4818-4447; 27 N. Y. Sup. 980; Constitution 1874, Art. V, § 18; 10 S. L. 332; 63 Ind. 327; 38 Ark. 283; 100 Mo. App. 311; 103 Wis. 98; 11 S. W. (Ky.) 594; Elliott on Appellate Procedure, § 622; 106 Mo. 217; 24 Ky. (J. J. Marshall) 55; 7 Lea (Tenn.) 62; 38 Ark. 216; 58 Ark. 110; 53 Ark. 415; 66 Ark. 312; 72 Ark. 254.

McCULLOCH, C. J. Appellant, A. J. Caughron, was indicted by the grand jury of Montgomery County for the crime of murder in the first degree for killing one Allen Stacy, and he obtained a change of venue to Polk County, where he was tried at the October term, 1910, of the court, and convicted of that degree of homicide. The trial was concluded on Friday, October 28, 1910, and he filed a motion for a new trial on October 29, which the court on that day overruled. He asked for time in which to present and file a bill of exceptions, but the court refused to grant it. On that day the court was adjourned without day, and the term of the Honorable James S. Steel, the judge of that circuit, expired and he was succeeded by the Honorable J. T. Cowling. On December 15, 1910, counsel for appellant presented a bill of exceptions to Judge Steel, and, notwithstanding his prior refusal to grant time, he signed the bill, and it was filed with the clerk, and has been duly certified in the transcript as a part of the record. Counsel for appellant and the Attorney General have also joined in a written stipulation, filed here, that the bill of exceptions as filed and certified is a correct record of the trial, showing all the testimony in the case, the instructions and rulings of the court and all the objections of appellant. The record did not originally show that time for presenting the bill of exceptions had

been requested and refused, but at a subsequent term of the court an order was entered, *nunc pro tunc,* showing those facts. The transcript was presented to one of the judges of this court, and an appeal was granted within the time prescribed by statute.

Counsel for appellant insist that the trial court abused its discretion in refusing to grant time for filing the bill of exceptions, and a majority of the judges are of the opinion that this contention should be sustained. The record should be looked to, according to the views of the majority, in order to determine whether time should have been granted, and the size of the record made by the bill of exceptions convinces them that it was impossible to prepare the bill of exceptions without additional time, and that it was erroneous to refuse to grant time. The statute provides that "the party objecting to the decision must except at the time the decision is made, and time may be given to reduce the exception to writing, but not beyond the succeeding term." Kirby's Digest, § 6222. The act of May 31, 1909, provides that on appeals or writs of error to the Supreme Court in capital cases "all errors of the lower court prejudicial to the rights of the appellant shall be heard and considered by the Supreme Court, whether exceptions were saved in the lower court or not." Acts 1909, p. 959; *Harding* v. *State,* 94 Ark. 65. The only vehicle by which a complete history of a trial can be brought upon the record is a bill of exceptions, yet the apparently anomalous situation is presented of this court being required by statute to consider errors without exceptions having been saved at the trial, but no other means are provided for bringing the history of the case upon the record. The only construction of the statute, as amended, which will carry out the will of the lawmakers is to hold that in capital cases no formal exceptions need be saved at the trial, but that a bill of exceptions must be presented to the presiding judge and signed and filed in order to make a record of the procedings; otherwise there is no record for this court to review. *Garner* v. *State,* 97 Ark. 63.

It being determined that the court erred in refusing to extend the time for filing bill of exceptions, the next question that presents itself is, what action is required in order to correct the error? Must the case be remanded for a new trial? The presiding judge, notwithstanding the expiration of his term, is competent to sign

a bill of exceptions. *O'Neal* v. *State,* 98 Ark. 449. When it appears that he has erroneously refused to grant time to prepare a bill of exceptions, this court can correct the error by granting time and by compelling him, by mandamus, to sign a bill of exceptions which meets his approval. The aggrieved party cannot be made to suffer by an erroneous ruling of the court, and is entitled to a bill of exceptions when he has without fault proceeded with due diligence and within the terms of the statute. *Springfield* v. *Fulk,* 96 Ark. 316. It appears from the record that a bill of exceptions was presented to the presiding judge within a reasonable time, and that he signed it. Hence it would be useless to compel him to repeat that which he has already done. The error is therefore corrected by accepting the bill of exceptions thus signed and filed as a part of the record, and the appellant cannot rightfully insist on more than that he be heard on the merits of the case as presented in the record which he has caused to be made and which he has expressly stipulated is correct.

The first assignment of error is as to the ruling of the court in excusing a juror after he had been accepted by both sides. The juror stated to the court that he was subject to spells, and was liable to be sick, especially if he was kept up at night and the jury kept together, and also stated that he did not attend lodges and meetings of that kind for that reason, and that he felt if he was taken on the jury he would probably be confined for weeks if he was kept out at night. Whereupon the court, of its own motion, excused the juror over appellant's objection. It does not appear that appellant exhausted his peremptory challenges, and this disposes of the contention that he was prejudiced by the ruling. *Mabry* v. *State,* 50 Ark. 492; *York* v. *State,* 91 Ark. 582.

Moreover, it was within the discretion of the court to excuse a juror when it appeared he was likely to become sick during the progress of the trial. The statute expressly authorizes the trial court to excuse a juror who, on account of physical infirmity, is incapacitated from properly performing the duties of juror. Kirby's Digest, § 2360.

The killing occurred at appellant's store on the afternoon or evening of Sunday, July 10, 1910, near sunset. He was sitting on the front porch of his store, and Stacy rode up on a mule,

when appellant seized a double-barrel shotgun, which was sitting just inside of the window, and fired both barrels in quick succession; the first shot taking effect in Stacy's left side just below the apex of the heart and the second near the middle of his back. He fell from his mule, and died instantly. There is conflict in the testimony as to what took place between the men immediately prior to the shots. Two boys were riding with Stacy, his son and nephew, and they each testified that when they rode up appellant was sitting near the window on the porch reading, and when they got near the porch appellant reached back and grabbed the gun and said: "God d—n you, I have got enough of your riding by here, and won't have any more!" and threw up the gun and fired; that deceased cried out just before the first shot, "Please, Mr. Caughron, don't shoot me;" that his left side was toward appellant when the first shot was fired, and that his back was toward appellant when the last shot was fired; that after the last shot appellant put the gun back in the house, sat down and began reading again. According to the undisputed testimony, Stacy was in his shirt sleeves, and was unarmed. Appellant and his daughter and son-in-law, who were present at the killing, testified that when Stacy rode up he reined in his mule toward the porch and spoke to appellant in a very angry tone, saying: "You old s— of a b—!" Whereupon appellant reached in the window, grabbed the gun, and fired two shots in quick succession, without putting the gun to his shoulder. Appellant testified, in addition, that when Stacy spoke he had the bridle reins in his left hand, and that he (appellant) could not see Stacy's right hand. Jameson, appellant's son-in-law, testified that after the first shot the mule Stacy was riding wheeled and made two or three jumps before the second shot was fired, and that Stacy was sitting erect in the saddle when the second shot was fired. A few days before the killing appellant married Mrs. Belle Stacy, the widow of Allen Stacy's uncle. She owned a farm in the neighborhood which Allen Stacy had been cultivating for several years. The two men, appellant and Stacy, had been on friendly terms until Saturday, the day before the killing, when they exchanged hot words concerning a trip which Stacy and appellant's wife were to make together in a buggy to Womble, a distance of about eighteen miles. Mrs. Caughron had a daughter living near Womble, and Stacy

had children there, and they prepared to drive over there together. Appellant objected to his wife going with Stacy, and insisted on going with her himself. Mrs. Caughron rode up to the store in a buggy with Stacy, and asked appellant, "Are you going with me?" He replied, "I would like to go," and expressed objection to Stacy's going with her, whereupon angry words between the men followed. Appellant endeavored to get his gun at that time, but was restrained by his daughter, and Stacy spoke some threatening words, and made an effort to get out of the buggy, and Mrs. Caughron whipped up the team and drove off. Another witness testified that Stacy was armed at that time, but this is contradicted. Mrs. Caughron and Stacy returned in a few minutes with Stacy's son in the buggy with them, and Stacy said to appellant: "I want to show you that it is not just a trip with Belle that I want; I have got a boy that is big enough." This was defendant's version, and another witness testified that Stacy, on his return, said, "Just to show the old man that I am not hunting to go with his wife, I have got a son that is old enough to go with her." There is testimony to the effect that Stacy returned to the store several times during the day, and made threats against appellant. The boy accompanied Mrs. Caughron to Womble, and on their return the next afternoon (Sunday) Stacy and the two boys, his son and nephew, drove by appellant's store to leave the buggy. It appears that the buggy belonged to appellant and the mules to Stacy. They got out of the buggy, and left it there in front of the store porch, and mounted the mules, and rode off over to Mrs. Caughron's farm, about half mile distant, which Stacy was cultivating. Appellant was sitting on the porch reading at that time, and nothing was said between the men. In a short while Stacy and the boys returned on their way home, and when they reached the front of the store the killing occurred as hereinbefore stated. The boys testified that on their return appellant had changed his position, having seated himself near the window through which he drew the gun.

The evidence shows that the nearest and most direct route from the farm to Stacy's home was not by the store, but there was other testimony to the effect that Stacy generally traveled that way when going from the farm to his home.

The State was permitted, in rebuttal, to prove by the testimony of members of the coroner's jury, over appellant's objection, contradictory statements of W. J. Maples, a witness for appellant. It is contended by counsel that these statements could be proved only by the minutes of the examination at the coroner's inquest, and not by the oral testimony of witnesses who were present and heard the statements. This contention is not sustained by the decisions of this court. *Shackleford* v. *State,* 33 Ark. 539; *Payne* v. *State,* 66 Ark. 545; *Petty* v. *State,* 76 Ark. 515.

It is also argued that the court erred in permitting the State to prove by witness Marion Edwards, in rebuttal, that Jameson, appellant's son-in-law, came to the house of witness on the day of the killing to borrow a pair of bullet moulds, and said at that time that "the old man might need a load or two." This testimony was introduced without objection on the part of appellant, and without objection having been made it cannot be held that the court committed any error in admitting it. There being no objection to the testimony, no ruling of the court was called for, so there is nothing for us to review. *Harding* v. *State, supra.*

Numerous rulings of the court in giving and refusing instructions are assailed.

The first assignment, as to error in instructions, is the giving of instruction No. 13, which is in the language of the statute, and reads as follows:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the prosecution it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

Under the testimony adduced in the case it was proper for the court to give this instruction. *Cogburn* v. *State,* 76 Ark. 110; *Petty* v. *State,* 76 Ark. 515; *Childs* v. *State,* 98 Ark. 430.

The next assignment is as to the giving of instruction No. 33, which reads as follows:

"Although you may believe that the defendant fired the first shot in necessary self defense, still if you believe that the second shot was fired at a time when it was not necessary to further de-

fend himself, then the defendant would be guilty of murder in the first degree, or murder in the second degree, or manslaughter, provided you believe that the second shot contributed in any manner to the death of deceased."

This instruction was correct, and was applicable to the testimony in the case. The testimony tends to show that both of the wounds inflicted by appellant were fatal, but there was some testimony to the effect that several moments elapsed between the shots; that the mule which Stacy was riding made two or three jumps, and that at the time of the second shot Stacy was sitting erect in his saddle. This had some tendency to establish the fact that the second wound contributed to the death of Stacy, and on this subject Mr. Wharton states the law as follows:

"So, if a person inflicted a wound upon another while acting in self defense, and afterwards inflicted another after his antagonist had declined all further combat, and was fleeing from him, and each wound was sufficient to have produced death, he may be adjudged guilty of murder in inflicting the last wound, if it contributed to the death, though, had it not been inflicted, the deceased would have died from the wound given him in necessary self defense; but if the latter wound did not contribute to death, he is not guilty of any degree of homicide." Wharton on Homicide, § 313.

The jury might have believed from the testimony that Stacy was making a demonstration when the first shot was fired, but was fleeing from the conflict when the second shot was fired.

The next objection is to instruction No. 32. The objection to instruction No. 23, on that subject, is for the same reason. These instructions read as follows:

"23. If you find from the evidence in the case beyond a reasonable doubt that the defendant took a position on the gallery accessible to a gun, and had reasonable grounds for believing that if he was there he would be attacked by the deceased, and that by his acts and demonstrations he caused or provoked an attack to be made upon him, with intent then and there to kill the deceased, and that he was so attacked, and that he killed the deceased, then, having voluntarily entered into the contest, he can not claim the benefit of the plea of self defense, and you should find him guilty of murder in the first degree."

"32. If you believe from the evidence that defendant took a position on the gallery, accessible to the gun, and shot and killed the deceased pursuant to a previously formed design to kill him, then you will find him guilty of murder in the first degree."

Instruction No. 32, it is true, does not embrace the idea of self defense and of an effort on the part of the defendant to avoid the difficulty, but this is covered in other instructions, and this one is a correct statement of the law in general terms. There is no contention that the appellant sought in any way to retire from the difficulty, as he admits that he fired the shots instantly when the deceased rode up and spoke the angry words to him. Besides, the language of this instruction positively negatives the idea of self defense, and its plain meaning could only have been understood by the jury to be that, if appellant prepared himself for the difficulty and shot and killed deceased pursuant to a previously formed design, and not in self-defense or upon provocation, he would be guilty of murder in the first degree. This instruction is fully warranted by the testimony, which tends to show that the appellant prepared himself with a gun, which was secreted near his position on the front porch; that deceased had just passed by a short time before, and he had reason to anticipate his return; and that when the deceased rode up he seized the gun and, without the deceased speaking a word except to plead for his life, shot him down without the slightest provocation.

Instruction No. 23 is on the same subject as No. 32, and is, we think, a correct statement of the law applicable to the facts of this case. *Wheatley* v. *State,* 93 Ark. 409. It has been suggested that the jury may have understood this instruction to mean generally that if the killing was not in self defense, the degree of homicide would be murder in the first degree. We do not think, however, that the instruction is open to that misleading construction, especially when considered in the light of other instructions which submitted to the jury the different degrees of homicide.

Instruction No. 27 is also assailed as erroneous. It reads as follows:

"The court instructs the jury that if you believe from the evidence that the defendant sought, brought on, or voluntarily entered into a difficulty with the deceased for the purpose of wreaking vengeance upon him, or if you find from the evidence

that he shot and killed deceased at the time when he had, because of the acts of the deceased, no reasonable apprehension of immediate and impending injury to himself, and did so from a spirit of retaliation and revenge for the purpose of punishing the deceased for past injuries done him, then the defendant cannot avail himself of the law of self defense, and you should not acquit him on that ground, no matter how great the danger or imminent the peril to which the defendant may have believed himself to have been exposed during the difficulty."

This instruction would have been improper in a case where there was testimony tending to show that the accused, after having voluntarily brought on the difficulty, had sought in good faith to retire from the conflict; but there is no such testimony in this case. The only question is whether the deceased brought on the difficulty by a vile epithet directed at appellant, or whether he was shot down by appellant without provocation while he was peacefully pursuing his journey along the road. There was nothing whatever in the testimony which would have justified the jury. if they believed that appellant voluntarily brought on the difficulty, in finding that he attempted to withdraw from it before he fired either of the fatal shots. Therefore, it was unnecessary to submit that question to the jury, and this instruction which omitted it was not defective by reason of the omission.

Error of the court is assigned in refusing to give instructions Nos. 12 and 15 requested by the appellant, but we find, on careful examination of all the instructions given, that these were fully covered by the court. In fact, we find that the jury was instructed upon every phase of the case, and that no prejudice could have resulted from the court's charge.

The case having been submitted to the jury upon correct instructions, and, the testimony being legally sufficient to warrant the jury in finding the defendant guilty of murder in the first degree, nothing remains for this court to do but to affirm the judgment, and that is accordingly done.

HART and KIRBY, JJ., dissent on the ground that the error of the court in refusing to grant time for preparing a bill of exceptions calls for a new trial.