### MOORE *v.* STATE.

### Opinion delivered July 10, 1916.

1. EVIDENCE—DYING DECLARATIONS.—Dying declarations are admissible only in homicide cases, where the death of the deceased is the subject of the inquiry, and where the circumstances of the death are the subject of such declaration.

2. APPEAL AND ERROR—INSTRUCTIONS COVERED BY OTHERS.—It is not error to give a requested instruction covered by other instructions already given.

Appeal from Pulaski Circuit Court; *R. J. Lea,* Judge; affirmed.

#### STATEMENT BY THE COURT.

Leonard Moore was indicted for murder, for killing John Lee, Jr., and from a judgment of voluntary manslaughter, brings this appeal.    The .killing occurred eight or ten miles north of Little Rock, about 5:30 o'clock in the morning, on November 23, 1915.

Moore was driving along the pike, towards Little Rock, in a one horse wagon at the time he was overtaken by the deceased, who was riding a mule, and the killing followed.

Appellant testified that he had started to go to his father's at England and had nothing in his wagon but a wagon sheet; that Lee overtook him—cursed him and

asked what he had in the wagon. He told him that he had nothing. He continued cursing him and said he was going to kill him—jerked out his pistol and shot at him twice. Moore jumped out of the wagon on the far side taking his shot gun with him, but kept driving. Lee turned his mule and started back. The witness drove on and Lee returned and began cursing him again. Witness then turned his wagon and started back home not wanting any trouble, but Lee kept coming on close and, as witness saw him draw his pistol and fire two shots, he also fired two with his gun and Lee fell from his mule. Two shots from the pistol struck the defendant, one in the hand and the other in the arm. He said the first two shots were fired at him while he was in the wagon; that he had nothing in the wagon; was sitting on part of the sheet and the other part was hanging down from the seat; that Lee did not try to look under the wagon sheet. It was moonlight, about 5.30 in the morning.

Other witnesses testified about hearing the shots and the sound thereof—some stating from the reports heard that two shots were first fired from the pistol; a little later, two more, then followed the two shots from the shot gun in quick succession, then more shots from the pistol. The State's witnesses testified that the louder, heavier reports of the gun were the first heard.

The dying declaration of the deceased was introduced, over objection, as follows: "Lee told me it was all up with him. I asked him how it happened and he said he had watched three negroes all night as they killed and skinned a cow; that he followed Moore to town. As he started to see what Moore had in the wagon, Moore shot him. The doctor was right by me when the statement was made."

Another witness stated: "Deceased said he was awakened by the snort of his mules at the lot and upon investigation, saw some negroes down in the thicket back of the field. He crept up close enough to see them. They were butchering a beef which he was sure belonged to him. He was there until they drove up to appellant's house

through the thicket where one of the negroes let appellant
have his wagon."

"He also named the three—Leonard Moore, Joseph
Moore and Robert Coleman. After they started away
with the meat, he followed and overtook Moore and tried
to see what he had in the wagon and then Moore shot him
off his mule. He said he fell off his mule, then shot 6
times at Moore with his pistol; that Moore jumped out
of the wagon and shot him after he jumped out."

Several witnesses stated that there were no signs of
blood on the wagon and no meat in it. One witness for
the State, however, testified that appellant brought some
meat to his house in a wagon and that it looked like the
carcass of a yearling, with the feet still on it, and left it
there and said he had had "a shooting scrape."

*Bratton* v. *Bratton*, for appellant.

1. It was error to admit the "dying declarations,"
especially that part stating what occurred prior to the
shooting. 39 Ark. 231; 68 *Id.* 359, 104 *Id.* 175; 140
S. W. 298; 80 Ind. 338; 60 Kans. 772; 76 Ky. 246; 126
N. W. 837.

2. There was error in the instructions as to the plea
of self-defense and reasonable doubt. 46 Ark. 141; 59
*Id.* 379. The refusal to give defendant's requests as to
self-defense and the amount of proof necessary to sustain
it was prejudicial error.

*Wallace Davis*, Attorney General, and *Hamilton
Moses*, Assistant, for appellee.

1. There was no error in admitting the dying dec-
larations. They met the requirements of the law and a
sufficient foundation was laid. 104 Ark. 176; Greenleaf
on Evidence (15 ed.) § 159; 101 Mo. 464; 61 Cal. 164;
15 Tex. App. 304; 58 Ark. 54; 81 *Id.* 418; 68 *Id.* 359; 85 *Id.*
179; 43 Tex. Cr. Rep. 52.

2. There was no error in the court's instructions.
Every phase of the law was fully and fairly covered and
appellant's theory of self-defense and reasonable doubt
fully and forcibly presented. 103 Ark. 353; 105 *Id.* 358;
Kirby's Digest, § 1792-3.

3. The evidence sustains the verdict—really, the jury were lenient.

KIRBY, J. (after stating the facts). 1. It is con-contended that the court erred in admitting the dying declaration or that part of it stating what had occurred prior to the shooting and in the refusal to give certain instructions. It is sufficiently shown that the statement made by the deceased was made under a sense of impending death and admissible as a dying declaration. *Rhea* v. *State*, 104 Ark. 176; *Newberry* v. *State*, 68 Ark. 359.

It is contended, however, that the statement relating to matters antecedent or prior to the transaction which caused the death of the decedent was not competent.

"Dying declarations," as said in *Rhea* v. *State, supra*, "are admissible only in cases of homicide while the death of the person killed is the subject of the charge and the circumstances of the death are the subject of such declarations."

In *Newberry* v. *State*, 68 Ark. 359, the court said: "Such declarations can be admitted only to prove the circumstances attending or leading up to the homicide."

It is true the statement relative to watching the appellant and others skin the beef before he started to take it to town in the wagon was of matters antecedent to the shooting which followed upon the attempt of the deceased to ascertain what was contained in the wagon, but it was a part of the occurrence which caused the deceased to follow and overtake the appellant and attempt to discover what the wagon contained, and it would have been difficult to give an account of the occurrence of the homicide without stating said facts. The court properly limited their consideration of it by instructing the jury that "if they believed from the evidence that defendant had been guilty of grand larceny, it would not deprive him of the right to defend himself against an unwarranted assault," and no error was committed in the introduction of said dying declaration.

2. The complaint of the court's refusal to give the instructions requested upon reasonable doubt, is not well

founded. The instructions given by the court fully declared the law upon that point and it is not error for the trial court to refuse to give a requested instruction as to reasonable doubt, where the instructions given properly declare the law on that subject. *Morris* v. *State*, 103 Ark. 353; *Johnston* v. *Fuqua*, 105 Ark. 358.

We find no prejudicial error in the record and the judgment is affirmed.