HOWELL *v.* STATE.

Opinion delivered October 28, 1929.

*Harney M. McGehee,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

MEHAFFY, J. Appellant was convicted of murder in the first degree, and the death penalty was imposed. No motion for a new trial was filed, and we can therefore consider only the errors that appear on the face of the record. The attorney representing appellant here did not represent him in the lower court.

The evidence showed that Howell was an inmate of the county hospital in Crawford County; that, a few days before the killing with which he is charged, the superintendent, Deffenbaugh, asked Howell to fix a bed for a patient, and Howell told him he would not do that for him or anybody else. He became enraged, and packed his grip and left. He had on a pair of boots that the heels

were worn off, and they made a grating on the floor when he walked. The killing took place about 7:30 or 8 o'clock, and one of the witnesses saw a man run out and slam the screen door, and testified that he heard a scraping noise like tacks striking on the concrete. In the room where the shooting took place Nicholson was found dead, Deffenbaugh was dead, and Mrs. Deffenbaugh was lying on one side, still living, and asked for help, and said that W. H. Howell did it. The witness who testified to seeing the man run could not recognize him.

Deffenbaugh and Howell had not had any quarrel, but, after he had told Howell to help him with the bed, Judge Stockard discharged Howell. Howell, before the killing, left the county farm, and said he was going down and tell the county judge what they had been doing; that they had turned him out, and he was going to see the judge. He was mad.

Another witness testified that Howell said they turned him away without cause, and were keeping two young men there who had never paid a cent of taxes. This was about three days before the killing.

The county judge testified that he had sent Howell to the county house temporarily, and told him so at the time he sent him. On Wednesday before the killing Howell went to his office, and wanted to know whether he had been let out, and the judge told him he had. Howell remonstrated with the judge, and the judge ordered him out of his office. As Howell was leaving, he remarked: "I will get even with the last one of you that had anything to do with it." The judge then reached for a hammer, and told Howell to get out of his office, and Howell left.

Another witness testified that he saw Howell in a hardware store, the day before the killing, and he bought some 38-calibre Winchester shells. The empty shells that were found were identified by witness as the same kind that Howell had bought. Howell was seen on the same day of the killing with something in a gunnysack

that looked like a walking stick. He was going towards the county infirmary, and another witness testified that he saw Howell on the day of the killing. Howell rode with him a short distance, and this witness said Howell had something in his sack, and he asked him what it was, and Howell said it was a gun.

About noon on the day of the killing another witness said that a large man came to her house, wanting some dinner, and that he had something in a sack. She pointed out the man in the court room.

Another witness testified that Howell came to her house in the afternoon before the killing, and wanted something to eat, and that when he left he went in the direction of the county farm.

When Howell was arrested, the Monday morning before the killing, he had his Winchester, and the shells in the gun were the same kind as the empty shells picked up in the hall where the parties were killed. They were 38-calibre.

Other witnesses testified that they picked up empty shells around the infirmary, and identified them as 38-calibre shells.

I. N. Alexander said that some time last December Howell was at his house and ate supper. He was there 25 or 30 minutes. He was carrying a Winchester. That he was mad, and said he had just had a fight.

Another witness testified that a man came to his house, and said his name was Thompson. He had a Winchester, and said he was lost. Witness then pointed out the man at the end of the table as the same person.

There was some testimony that Howell was not entirely normal.

Appellant was being tried for the murder of J. D. Nicholson, and the prosecution proved by witnesses that Mrs. Deffenbaugh, who was evidently killed at the same time, had made a dying declaration in which she stated that Howell did it.

It is contended by the appellant that he did not have a fair and impartial trial, and that the dying declarations of Mrs. Deffenbaugh were improperly admitted in evidence.

There is some conflict in authority about the admissibility of the dying declarations of a person other than the one defendant is being tried for killing, some courts holding that, where two or more persons are killed at the same time by the same person in the trial for killing one, the dying declaration of one of the others that was killed at the same time is admissible. Most courts, however, hold that only the declarations of the person whose death is the subject of the charge against the accused are admissible. Under the common law, dying declarations are admissible in criminal prosecutions for homicide only, and the declaration is then admissible only when the declarations are those of the person whose death is the subject of the charge against the accused, and the circumstances of such death are the subject of the declarations. Such declarations are not admitted to prove the killing of any other than the declarant.

"According to the weight of authority, this rule is adhered to where the accused has killed two or more persons by the same felonious act, and is on trial for the murder of one of them; but there are cases holding that, upon the trial of the accused for the murder of one of his victims, the dying declarations of another are admissible, inasmuch as he might have been charged in one indictment for the murder of all of them, when such evidence would have been clearly admissible." 21 Cyc. 982.

This court, however, has held that the dying declaration of the person for whose death the defendant is being tried only can be introduced; that the dying declaration of any other person, although killed at the same time and by the same person, is not admissible.

"Dying declarations are admissible only in case of homicide where the death of the person killed is the subject of the charge, and the circumstances of the death are

the subject of such declarations.'' *Rhea* v. *State,* 104 Ark. 162, 147 S. W. 463; *Moore* v. *State,* 125 Ark. 177, 188 S. W. 3.

Therefore the dying declaration of Mrs. Deffenbaugh should not have been admitted; but no objections were made in the trial court, and it cannot be considered here. The evidence, without the declaration of Mrs. Deffenbaugh, was sufficient to justify the jury in finding that the appellant killed the three persons. No objection having been made to the introduction of this testimony, it cannot be considered here.

*Harding* v. *State,* 94 Ark. 65, 126 S. W. 90, was a case where the defendant was convicted of murder in the first degree. He saved no exceptions to the evidence adduced or to the instructions, but relied on the statute (Acts 1909, p. 959) which provides that, when one has been convicted in the lower court of a capital offense, all errors of the lower court prejudicial to the rights of the appellant shall be heard and considered by the court, whether exceptions were saved in the lower court or not. And, if the Supreme Court finds that any prejudicial error was committed by the trial court in the trial of any case in which a conviction of a capital offense resulted, such cause shall be reversed, and remanded for a new trial, etc. The court said in construing this statute:

"The Supreme Court of this State has appellate jurisdiction only, except it may issue writs of *quo warranto* to the circuit judges and chancellors, and to officers of political corporations when the question involved is the legal existence of such corporation. * * * As to the admission of evidence in a trial, a question as to its admissibility or competency must be presented to the circuit court by objection or otherwise for decision before it can err as to its admission, and the same is true as to the law of the case. No exception to such decision is necessary, under the act of 1909, to present it to this court for review, neither is a motion for new trial in cases in which the defendants have been convicted of

capital offenses. But it must appear that the decision was made before we can find that the court erred. It is only for errors of the lower court that the act of 1909 authorizes this court to reverse or modify judgments of conviction of capital offenses. Such errors must appear in the manner indicated before such authority can be exercised." *Harding* v. *State,* 94 Ark. 65, 126 S. W. 90.

This court also has said: "Appellant now contends that the testimony of Homer Bearden was incompetent, and that the court erred in not sustaining his motion to strike it out. In *Warren* v. *State,* 103 Ark. 165-171, 146 S. W. 477, we said: 'Where incompetent evidence is offered, it is the duty of the party to object immediately, or at least within a reasonable time. If he fails to object at the time, and afterwards asks for the exclusion of the incompetent evidence, he cannot demand its exclusion as a matter of right, but the request addresses itself to the discretion of the court. A party cannot speculate upon what the testimony of a witness will be, and then at the end of the trial demand as a matter of right that the incompetent testimony be excluded." *Bell* v. *State,* 120 Ark. 531, 180 S. W. 186.

In the Bell case it was also said that the appellant did not object to the testimony at the time it was given.

"Here, as above stated, the record does not show that any objection was made to the manner of selecting the jury. This court has held repeatedly in capital cases that there are certain constitutional and statutory rights guaranteed to the defendant as a personal privilege, which he may waive at the trial, and which he does waive by not objecting to the method of procedure during the trial. Most of the cases on this point, as well as a review of them, will be found in the majority opinion, or in the dissenting opinion, in *Shinn* v. *State,* 150 Ark. 215, 234 S. W. 636. * * * Both the majority and the dissenting opinion recognized that rights which do not affect the State and are in the nature of a personal privilege may be waived by the defendant, and are waived by him where

248

he does not object during the trial.'' *Sullivan* v. *State,* 161 Ark. 19, 257 S. W. 58; *Bullen* v. *State,* 156 Ark. 148, 245 S. W. 493.

The court, in the case of *Sullivan* v. *State* also said, in speaking of the statute with reference to procedure in capital cases: ''In construing this act, however, this court has held that, while formal exceptions need not be saved at the trial, objections must be made to the proceeding in the trial court in order to obtain a review of the alleged errors in this court.'' And it cites *Harding* v. *State,* 94 Ark. 65, 126 S. W. 90; *Caughron* v. *State,* 99 Ark. 462, 139 S. W. 315; *Morris* v. *State,* 142 Ark. 297, 219 S. W. 10; *Snead* v. *State,* 159 Ark. 65, 255 S. W. 895.

It therefore appears to be the settled rule of this court that, although in capital cases exceptions would not have to be saved, objection must be made at the time before this court will be authorized to review it, and, as to the admissibility of the testimony complained of, no objection was made at the time. As to the admissibility of the dying declaration, it is sufficient to say that no objection was made.

As this court has repeatedly held, the Supreme Court of the State has only appellate jurisdiction in cases of this kind. It reviews errors of the circuit court, but, before it can consider an error of the circuit court as to the admission or rejection of evidence, objection must be made in the trial court, and this is true in capital cases as well as others.

Appellant next contends that the court erred in refusing to allow him to show by witnesses the fact that he was not mentally normal at the time of the alleged shooting. The question asked, after reciting a number of facts, was: ''Do you consider that an act of a normal man?'' The State objected to it, first, on the ground that it was not based upon facts in proof. In other words, before the evidence would have been admissible, the State contended that it should state the facts in proof, and that it did not do this. It is also stated that it included things

that had not been proved. And the prosecuting attorney said: "It is not a question of whether or not he is normal, but whether he is insane." The defendant then modified the questions by asking: "Is it the actions of an insane man?" And the court permitted the witness to answer this question.

A sufficient answer to the objection here is that the question contained matters not in proof, and then that the defendant himself, when he changed the question without objection, necessarily waived his right to ask it in the form first presented. The same thing may be said about this as said about the last question, that no objection was made after the form of the question was changed. Moreover, the court properly instructed the jury with reference to the defendant's mental capacity to commit crime.

The appellant, however, argues that no exception was saved to the court's action, but that it is not necessary that exceptions be saved, because this is a capital case, and relies on § 3414 of Crawford & Moses' Digest, the act already referred to.

It is true that in a capital case no exceptions have to be saved, but we have repeatedly held that objections must be made, and there was no objection made to this question as appellant finally asked it himself, and it was permitted to be answered. When appellant changed the form of the question and substituted the word "insane" for the word "normal" he waived any objection he might have had to the question as originally asked, and he made no objection to it in the way it was finally asked, and, in fact, it was answered. But the court stated clearly that the question reiterated matters not in proof, and that would have been a sufficient reason for rejecting it.

The instructions given to the jury on the question of insanity are instructions that have been approved by this court time and again, and the record does not show any objections to any of the instructions, and they were as favorable to appellant as he had any right to ask.

The appellant also contends that the hypothetical questions and answers in response thereto, over his objection, were prejudicial. That hypothetical question recited the facts already testified to, and then asked the doctor if there was anything in that testimony, or the conduct of the defendant, as shown by this evidence, that indicated that he was insane, and he answered that there was not. We do not think the question was objectionable, and the court did not err in permitting it to be answered.

Appellant discusses at some length also the testimony of appellant's former wife, but that testimony was withdrawn from the jury, and the court instructed them that they should not give it any consideration whatever, and the court committed no error in this respect.

The statute relied on by appellant, as construed by this court, requires this court to consider all objections made by the appellant, whether excepted to or not. If objection is made, this court must consider it, whether exceptions were saved or not. We have construed the statute to mean this, but, where no objections are made, there is no error for the court to review. Witness might be asked about a dying declaration that would be wholly improper, as in this case, and not object, for the reason that he thought the answer might be helpful to him. If he were permitted to pursue this course, and then, when it turned out to be against him, could object, he would be in the position of taking advantage of it if it were favorable to him, and objecting if it were unfavorable. This he cannot do, but he must object, and, if he does, then this court will review the errors whether there were any exceptions or not.

There were three persons killed at the same time. The evidence is sufficient to show that the appellant did the killing, and we find no error in the record justifying a reversal of the case, and the judgment is therefore affirmed.