PHILLIPS v. STATE.

Crim. 3930

Opinion delivered May 20, 1935.

*Robert S. McGregor,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

MEHAFFY, J. Appellant was convicted of murder in the first degree, and the death penalty imposed. Motion for new trial was filed and overruled, and to reverse the judgment of the court this appeal is prosecuted.

The evidence showed that the appellant had made a fire in a box car on a siding or branch line of the Rock Island Railroad Company in Brinkley, Arkansas. He put tin on the floor and built his fire, and then lay down on the floor to sleep. After the appellant was asleep, it was reported to the station agent that a tramp had started a fire in one of the box cars, and Mr. Pollock, the deceased, was sent to investigate the matter. He was accompanied by Mr. McCance, a yard mechanic for the Rock Island Railroad Company. They went to the north end of the Brinkley yards to determine the origin of the fire, and to arrest or eject the offender from the railroad premises. When they arrived at the car, they found a man apparently asleep on the floor of the car near the fire that was burning on the piece of tin. McCance assisted Pollock to climb into the car, and he remained on the ground outside. Pollock had a lantern in one hand and a braking stick in the other. He aroused the appellant, and the appellant shot Pollock, from which wound he died. The appellant was also shot in the leg.

T. A. McCance testified that he was a mechanic for the Rock Island Railroad Company and had known Pollock, the deceased, about eight years; he was with him on March 3d when he was shot; a Cotton Belt conductor had reported to the yard clerk that there was a fire in one of the box cars; witness went with Pollock about two o'clock in the morning to investigate the fire. He gave

Pollock his lantern, and Pollock got up in the car, walked up to the appellant and asked him what he was doing with a fire, when appellant raised up with his gun in his hand and started shooting; when the shooting started, witness jumped from the side of the car, and said he knew Pollock did not have a chance with him; witness jumped back and the negro came up to the other door, jumped out and ran, and witness did not see him any more. The negro was lying against the wall about half way back in the car. Witness does not know how many shots were fired nor who fired the first shot. Nothing was said before the shooting started, except Pollock asked the negro what he was doing with a fire in the car. Pollock did not have his gun out when he got into the car. The shooting started when he asked the negro what he was doing there. Pollock had a lantern in one hand and a stick in the other. The stick was one that witness used in inspecting brakes and putting on brakes; it was a good sized club.

The appellant testified that he was in one of the empty box cars about two o'clock in the morning asleep. He got there about 12:30 and got cold, got out of the car and got some packing out of a wheel, put it on a piece of tin and made a fire; pulled off his coat, laid it on the floor, pulled out his gun and laid it by his head and went to sleep. About 3 o'clock this man came in the car, but witness did not discover him until Pollock got about where witness was. He testified that Pollock, using profane language, asked him what he was doing there, and said he was going to kill him; that Pollock hit him with a stick, and when Pollock struck him he fired. He said that he got back in the corner and commenced shooting and that Pollock shot him. He did not know Pollock was an officer. Pollock said he was going to kill him, and he believed it. He then tells about escaping and getting him something to eat. He said he knew he had broken into the post office at Fair Oaks, but did not know the Government officials were after him, and was not fleeing from them.

Dr. McKnight testified that he attended Pollock on March 3, 1934, found him suffering from gun shot

wounds, which were apparently inflicted by a pistol. He had been shot through the abdomen and through the spinal column, and was operated upon to remove the bullets. Five days later on March 8th, he died as a direct result of pistol shot wounds.

J. F. Rinemiller testified that he lived in Memphis, was not connected with the Rock Island in any capacity, was present in Cairo, Illinois, when Green Phillips was arrested, and accompanied the officers when they returned him to Blytheville, Arkansas; was present at the time he confessed that he was guilty of killing Pollock; he made the confession of his own free will; he was not threatened nor was he promised any concession. Witness was special agent for the Frisco Railroad Company at Memphis. A notary public was called when appellant's statement had been written on a typewriter and read over to Phillips, and he signed it.

Other witnesses testified about the confession, but we deem it unnecessary to set out the testimony in detail. There is no dispute about the shooting. There is some conflict in the evidence of McCance and appellant as to how it occurred.

The appellant contends that the court erred in permitting certain questions to be asked him on cross-examination, and erred in requiring him to answer. It is argued that when McCance was asked this question: "And Mr. Pollock was shot by the negro?" and answered as follows, "Yes, sir, the negro started shooting, and he knew that Mr. Pollock didn't have any chance with him. He jumped back and the negro came up to the other door and ran out, and we didn't see him any more," that this statement clearly indicated prejudice on the part of the witness. But there was no objection made to this evidence.

On cross-examination the appellant was asked about having committed other crimes, but numbers of these questions were asked and answered without objection. The prosecuting attorney stated that he was testing the credibility of the witness. Appellant did not object to being asked about the crimes he had committed, but, if he had, it was entirely proper for the prosecuting at-

torney to ask him questions to test his credibility and, according to the evidence, he had voluntarily stated that he had robbed the post office at Fair Oaks, and, if he did that and was fleeing from the officers, this evidence would have been proper as tending to show who began the shooting, and how it occurred. It is true he says he was not fleeing from the law, but he admits that he robbed the post office, and, if that is true, whether he was fleeing from the law or not, the knowledge that he had committed this crime, and that officers might be after him had a tendency to throw light on the question as to how the shooting occurred.

Moreover defendants in cross-examination in criminal cases may be asked any question testing their credibility, and about any similar crimes to show knowledge or intent. *Scrape* v. *State,* 189 Ark. 221; *Sibeck* v. *State,* 186 Ark. 194, 53 S. W. (2d) 5; *Wilson* v. *State,* 184 Ark. 119, 41 S. W. (2d) 764.

In the instant case the evidence was important as tending to show whether the shooting occurred like appellant said or like McCance said. But whether the evidence was competent or not is immaterial here because this court merely passes on the errors of the lower court. While the law requires us, in capital cases, to hear and consider all errors, whether exceptions were saved in the lower court or not, this section of Crawford & Moses' Digest, § 3414, has been repeatedly construed by this court, and we have held uniformly that we cannot consider any error unless objection was made to it in the lower court.

*Howell* v. *State,* 180 Ark. 241, 22 S. W. (2d) 47, was a case where the defendant was convicted of murder in the first degree, and the death penalty imposed. We said in that case: "It therefore appears to be the settled rule of this court that, although in capital cases exceptions would not have to be saved, objection must be made at the time before this court will be authorized to review it, and, as to the admissibility of the testimony complained of, no objection was made at the time." *Harding* v. *State,* 94 Ark. 65, 126 S. W. 90; *Caughron* v. *State,* 99 Ark. 462, 139 S. W. 315; *Morris* v. *State,* 142 Ark. 297, 219 S. W. 10.

Appellant urges that the evidence is insufficient to justify a verdict of murder in the first degree, and calls attention to the fact that appellant testified that he was in fear of losing his life, and that he was assaulted by Pollock, who had a large club, and he shot in self-defense.

McCance, the only other witness who knew anything about the actual occurrence, testified that two guns were used, and that he did not know who shot first, Pollock or the negro. The undisputed proof shows that the negro was shot, and the evidence fails to show who fired the first shot.

This court said: "It is indispensable then in such cases that the evidence should show that the killing with malice was preceded by a clearly formed design to kill— a clear intent to take life. It is not however indispensable that this premeditated design to kill should have existed in the mind of the slayer for any particular length of time before the killing. Premeditation has no definite legal limits, and therefore if the design to kill was but the conception of a moment, but was the result of deliberation and premeditation, reason being upon its throne, that is altogether sufficient, and it is only necessary that the premeditated intention to kill should have actually existed as a cause determinately fixed on before the act of killing was done, and was not brought about by provocation received at the time of the act, or so recently before as not to afford time for reflection." *Harris* v. *State,* 119 Ark. 85, 177 S. W. 1144.

We think the evidence in this case is insufficient to justify a verdict of murder in the first degree. The jury however found the appellant guilty of murder, and there was ample evidence to justify this verdict.

"The only error committed is in the excess of the punishment. In other States where statutes authorize the appellate courts to modify the judgment of the circuit courts in criminal cases, the remedy in cases like this is found, not in a new trial, but by reducing the punishment to make it appropriate to murder in the second degree. The courts find no constitutional obstacle to such a practice.

"In this case the jury have found the prisoner guilty of murder; but, having found a degree of murder which the proof does not warrant, the verdict stands for the offense of murder, and fails as to the degree. It is then as though the jury had found him guilty of murder, but failed to assess the punishment. The two degrees of murder are not distinct offenses—they are only statutory regulations of the punishment of the one offense of murder, to be inflicted according to the mental state in which the crime is committed." *Simpson* v. *State*, 56 Ark. 8, 19 S. W. 99; *Routt* v. *State*, 61 Ark. 594, 34 S. W. 262; *Vance* v. *State*, 70 Ark. 272, 68 S. W. 37; *Allison* v. *State*, 74 Ark. 444, 86 S. W. 409; *Blake* v. *State*, 186 Ark. 77, 52 S. W. (2d) 644; *Warren* v. *State*, 88 Ark. 322, 114 S. W. 705; *Noble* v. *State*, 75 Ark. 246, 87 S. W. 120; *Williams* v. *State*, 183 Ark. 870, 39 S. W. (2d) 295.

This court said in the Simpson case, *supra*: "It is the established practice under our statute that a new trial shall not be awarded for an error not prejudicial to the prisoner. The appellant may therefore be sentenced for murder in the second degree."

The sentence for the first degree of murder will be set aside and appellant's punishment fixed at twenty-one years imprisonment for second degree murder, and judgment of the circuit court will be modified so as to sustain the conviction of second degree murder only, and fix appellant's punishment at twenty-one years in the penitentiary.

It is so ordered.