LUCKYADO *v.* STATE.

4264                               163 S. W. 2d 146

Opinion delivered June 8, 1942.

*J. H. Carmichael, Jr.,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J.  J. L. Taylor, restaurateur of England, was killed by appellant in circumstances which resulted in a jury finding that the accused was guilty of murder in the first degree. Judgment was that he be electrocuted.

Two errors are argued: (1) The act was justified as a measure of self-defense because appellant was being

assaulted by Taylor and his grown son, Robert, each of whom was wielding a wine bottle. (2) If a crime was committed, it was not first degree murder, and the court should have instructed to that effect.

The restaurant, or cafe, operated by Taylor was partitioned in such a way that whites and Negroes could be served and segregation maintained. Taylor had a wife and six children. They utilized the back of the building as living quarters.

Sanford, sixteen years of age, and Robert, twenty, assisted their father in serving customers with food and drink. Sanford testified that appellant entered the cafe after nine o'clock at night and ordered coffee and a sandwich. He paid for the sandwich, but did not pay for the coffee. Another Negro loaned appellant half a dollar and witness put forty-five cents on the counter near appellant's plate. Appellant kept insisting he wanted forty-five cents; whereupon Sanford pointed to the money and said, "shut up and be quiet."

Appellant began cursing, punctuating his profanity with the statement that "No white man is going to tell me what to do." Appellant then tried to cash a check to procure money with which to pay for his coffee. Sanford took the check to Robert, who said there wasn't money to spare. After fifteen minutes appellant left, still cursing. A short time later he returned, accompanied by another Negro. Again appellant sat down and began cursing. Sanford's father then went to appellant and told him that if he didn't quit swearing he would have to leave. Appellant left, but returned in fifteen minutes with another Negro, who had nothing to do with the disorder.

Appellant ordered a bowl of stew and began eating. He remained quiet for some time, then resumed his boisterousness. Sanford says his father told appellant he didn't want any more cursing because there were customers present. Additional testimony is quoted in the footnote.[1]

---

[1] "He didn't say anything, but laughed at Daddy, and his eyes 'blurred' around. . . . I saw Robert take a bottle of wine in his hand, and Daddy took a bottle of wine off the counter and held it in his hand. The Negro asked him if he had any other kind [of wine]

Robert Taylor's testimony was that his father had a pint bottle of wine in his hands (presumably in response to appellant's request to be served), but told Luckyado to get out if he couldn't behave. Appellant then used an extremely offensive expression. The witness also testified: "Daddy started to hit Luckyado with the bottle, and he started shooting. . . . I couldn't tell what he was going to do with his right hand until he pulled it up and pulled the gun. My father missed the Negro when he struck at him with the wine bottle. He shot three times before I got to him."

On cross-examination Robert admitted he testified at the preliminary hearing that appellant was sitting on a stool, and:—"I started toward him when he made a remark and hit at him and missed. My father came out with a beer bottle and he shot and broke it and killed my father."

Is the evidence sufficient to sustain the verdict of first degree murder?

Appellant seems to have been seeking trouble. His conduct in returning to the cafe twice after having demeaned himself in an offensive manner indicates a wilfullness of purpose. He did not testify; hence we are dependent upon other witnesses for essential facts. Testimony of Sanford and Robert Taylor is susceptible of the inference that appellant, while sitting before the counter, held a drawn pistol in his lap, concealed in such manner that the Taylors could not know that Luckyado was waiting reaction to his own provocative conduct for an excuse to carry into effect the murderous design he entertained.

and Daddy told him that was what he had. Robert told him if he wanted anything he would sell it to him, but if he didn't want anything, and couldn't behave, he would have to leave. Luckyado then said to Robert, 'No . . . is going to tell me what to do.' He was talking right across the counter from Robert. He had one hand in his lap and the other on the table. His hand down in his lap was hidden behind the counter. Robert drew back with the bottle of wine and struck down, and Luckyado jumped back and the wine bottle went on the floor. My father went around the counter. Robert jumped over it. Luckyado shot three times. One shot hit Daddy in the leg and he kept on going backwards. Robert tried to get in between my father and the Negro, but didn't until Daddy dropped his head and staggered toward the back door and fell. My father did not get his hands on Luckyado. Robert got hold of the gun after three shots had been fired. He jerked the weapon out of Luckyado's hands, and the Negro ran."

The verdict finding that appellant acted wilfully, feloniously, with malice aforethought, and with premeditation and deliberation, can be sustained only on the theory that Luckyado's purpose was to create the situation he took advantage of. We are unable to say there was not sufficient evidence to sustain this construction of appellant's acts, and the judgment must therefore be affirmed. It is so ordered.

HOLT, J., (dissenting). The undisputed evidence in this case discloses that at the time the fatal shots were fired by appellant, he was being attacked by the deceased and the son of the deceased. The deceased was wielding a bottle of beer and the son a bottle of wine. In these circumstances I think the elements of premeditation and deliberation, which were necessary to support a conviction of murder in the first degree, were lacking. This court in *Dowell* v. *State,* 191 Ark. 311, 86 S. W. 2d 23, held: "In a prosecution for murder, the manner in which the killing was effected is a potent circumstance tending to prove or disprove premeditation and deliberation."

It is my view that the evidence, when considered in its most favorable light to the appellee, would not support a conviction for a higher degree of homicide than that of murder in the second degree, the punishment for which may not be more than 21 years in the state penitentiary.

It is within the power of this court to reduce the crime to the lower grade. *Phillips* v. *State,* 190 Ark. 1004, 82 S. W. 2d 836. It is my view, therefore, that the judgment should be modified, by assessing appellant's punishment at 21 years in the state penitentiary, and as so modified, affirmed.

Mr. Justice FRANK SMITH concurs in this dissent.