## SHINN v. STATE.

### Opinion delivered October 24, 1921.

1. CRIMINAL LAW—HARMLESS ERROR.—The error of admitting incompetent evidence of the contents of a letter was not prejudicial where the letter as proved contained nothing unfavorable to the defense.

2. WITNESS—IMPEACHMENT.—The accused in a criminal case may, for the purpose of testing his credibility, be questioned on cross-examination as to his having been a gambler and as to other offenses and immoralities.

3. WITNESSES—RECALL OF ACCUSED FOR CROSS-EXAMINATION.—It was within the trial court's discretion to permit the State to recall the accused for cross-examination after the defense had closed.

4. WITNESSES—CROSS-EXAMINATION OF WITNESS ON COLLATERAL MATTER.—The testimony of accused on cross-examination as to whether he had participated in another crime cannot be contradicted by other testimony, as it relates to a collateral matter.

5. CRIMINAL LAW—TESTIMONY INTRODUCED WITHOUT OBJECTION.—Where evidence was introduced by the State without objection, its introduction cannot be assigned as error on appeal.

6. CRIMINAL LAW—INVITED ERROR.—Where certain experiments were made by the jury at defendant's request, and he was given the opportunity to witness the experiments, he cannot complain because the experiments were conducted in his absence.

Appeal from Pope Circuit Court; *A. B. Priddy,* Judge; affirmed.

*Hays & Ward,* for appellant.

The defendant on cross examination was subjected to a character of cross examination not permissible in

the case of other witnesses which was highly prejudicial to his cause. 53 Ark. 387; 58 Ark. 473; 60 Ark. 450; 70 Ark. 107; 72 Ark. 427; 75 Ark. 548; 78 Ark. 284; 91 Ark. 555; 103 Ark. 28; 104 Ark. 162; 106 Ark. 160.

It was error to allow the State to recall defendant, after he had closed his case, for the purpose of contradicting him. The evidence could not have been introduced by the State to establish its case, and was collateral to the issue, hence could not be contradicted. 34 Ark. 480; 59 Ark. 431; 2 Ark. 409; 76 Ark. 366; 99 Ark. 604; 101 Ark. 147; 103 Ark. 119.

The tests made with the gun, alleged to have been used in killing deceased, upon empty shells to show the impression made by the plunger, were prejudicial, as the same impression would not have been made with a loaded shell. Tests should be made under identical conditions with the original as nearly as possible. 18 C. J. 810; 115 Ark. 101.

The tests made under direction of the court with the gun and shells, away from the court house in the absence of defendant, was equivalent to taking testimony in his absence. 108 Ark. 191; 131 Ark. 320; 51 Ark. 553. Defendant could not, even by his own acts, consent to such procedure. It also amounted to the taking of evidence in the absence of the trial judge, whose presence at all stages of the trial is essential. 74 Ark. 19; 71 Ark. 112; 88 Ark. 62; 104 Ark. 629.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* assistants, for appellee.

The testimony of witness Burks, which appellant viciously attacks, if believed by the jury, would support the verdict and judgment. 36 Ark. 653; 32 Ark. 220. The jury was the judge of the credibility of the witness.

The testimony elicited from appellant on cross-examination was without any objection raised on his part. Where no objection is raised, its admission will not be reviewed on appeal. 130 Ark. 111; 101 Ark. 443; 99 Ark. 462; 129 Ark. 316. As appellant answered a number of the

questions propounded to him in the negative, he has no right to complain. A party cannot complain of the admission of evidence favorable to him. 52 Ark. 480; 118 Ark. 569. When a defendant in a criminal prosecution takes the witness stand in his own behalf, he places himself in the attitude of any other witness. 114 Ark. 239; 91 Ark. 555. A witness may be recalled for further cross-examination. 75 Ark. 574. The evidence so elicited was admissible for the purpose of reflecting upon the credibility of appellant. 138 Ark. 465; 139 Ark. 13.

The shotgun shells, fired without a load, in the court room and introduced in evidence, were so introduced at the request of both parties, and appellant cannot now complain of testimony offered by himself. 5 Ark. 41; 33 Ark. 180; 115 Ark. 392.

The further tests made with the gun and shells were at the request of appellant, and if there was error, it was invited by appellant and he has no right to complain. 108 Ark. 191. Not having requested the privilege of being present when the test was being made, it is too late now for him to complain. 86 Ark. 317.

The court could properly send its duly authorized officer with the jury without accompanying them himself, especially where this was done at appellant's request. 114 Ark. 245.

McCulloch, C. J. This is an appeal from a conviction of murder in the first degree, the punishment of appellant being fixed by the jury at life imprisonment.

The accusation against appellant is that he killed Lewis Vandergeten in Pope County on the night of November 27, 1920, by shooting him with a gun.

The first contention of appellant is that the evidence is not sufficient to sustain the verdict.

The killing occurred in a building called the "wash-house," at a coal mine about three miles from Russellville. On the night mentioned, the deceased and a crowd of other boys and men were engaged in playing craps in the wash-house at the coal mine, and about 11 o'clock

they were held up and robbed by three masked men. The three men walked into the wash-house by different doors, and one of them coming through the door at the north was armed with a shotgun. Deceased failed, when ordered, to put up his hands, and the man with the gun shot him, killing him instantly. The weapon used was a double barrel shotgun, and the empty shell was extracted and thrown on the floor at the spot where the shot was fired. One of the participants in the crap game who testified as a witness identified appellant as the man who fired the shot. The witness stated that he was well acquainted with appellant, and was standing in the crowd in the wash-house when the three robbers entered; that he saw enough of appellant's face to be able to recognize him and did recognize him as the man who fired the shot. Two other witnesses testified that the next morning after the killing appellant, apparently laboring under excitement, in speaking of the killing, said: "I done it. I might as well say I done it. I will be accused of it anyhow." That was, according to the testimony, before the appellant was arrested, and before any accusation was made against him. Appellant and his step-mother lived in about 300 yards of the wash-house. He had been to Russellville that night, and shortly before the killing he and two other young men drove out to the wash-house in a jitney, entered the house and participated in the game. Appellant left the house in a few minutes, and about fifteen or twenty minutes later the robbers entered and committed the crime. Appellant testified that when he left the wash-house he went home and remained there for about an hour and a half, and on his return to the wash-house ascertained that the crime had been committed, but that he was not a participant in the crime, and had no knowledge of it until he had returned to the wash-house. A double-barrel shotgun was found at the house occupied by appellant and his step-mother, and on examination it appeared that one of the barrels of the gun had been recently fired. Shells of the same size and make as the empty one found on the floor in the wash-house were

found at appellant's house. During the progress of the trial there were experiments made by firing from appellant's gun the same kind of shells, but these are matters which will be referred to later in discussing other assignments of error.

There was sufficient evidence to sustain the verdict. The credibility of the witnesses was a question for the jury to determine, and there was testimony adduced, both direct and circumstantial, which tended to establish appellant's guilt. There are other assignments of error which will be discussed in the order mentioned in the brief of counsel.

Objections were made to certain questions propounded to Mrs. Bettie Shinn on cross-examination and the exhibition to her of a letter said to have been received from appellant without introduction of the letter before the jury. Mrs. Shinn was asked whether or not she had corresponded with appellant while he was temporarily held in the penitentiary under the present charge. She answered in the affirmative, and the prosecuting attorney thereupon held up a letter and asked her if she had received that letter from appellant. There was a long colloquy then between counsel in the case, in which appellant's counsel objected to the introduction of any correspondence on the ground that it was not admissible because written from the penitentiary, and also on the ground that the letter itself should first be shown to the witness. The court permitted the question to be asked in the following form, and answered:

"Q. I will ask you if you got a letter from Shinn in which he stated this, 'You all know that I left home and come back through the same door, and that the lights were burning when I left and when I come back, and that I could not have took my gun or brought back any gun, as the lamp was lit when I come back, and the kind of pants I wore, so you will be asked all these, and that I slept on a couch in the north room, your room, and that the lights burned all night, and me and Luther got up and

fed and milked the cows, etc., in the morning.' Did you get a letter from him with a statement like that from him?

A. "Yes, sir."

Without determining whether or not the contents of the letter were properly brought to the attention of the jury, we are clearly of the opinion that there was no possible prejudice that could have resulted from this incident in the trial. There was nothing unfavorable to appellant's defense contained in the purported statement in the letter. It was written to his step-mother, with whom he was living at the time the killing occurred, and with whom he sustained, according to the testimony, the most cordial relations, and the statement does not tend to incriminate appellant in any way, so therefore there was no prejudice in its introduction.

It is next contended that there was error in permitting appellant to be cross-examined concerning his past conduct. Appellant was asked all sorts of questions about having been a gambler and about other offenses and immoralities. This was merely for the purpose of testing his credibility and was admissible as such. This court so decided in the case of *Hollingsworth* v. *State,* 53 Ark. 387. This was with regard to a witness other than the accused himself, but we have since then frequently held that the same rule applies to a defendant in a criminal prosecution when he takes the witness stand in his own behalf. *Ware* v. *State,* 91 Ark. 555; *Hunt* v. *State,* 114 Ark. 239; *Nelson* v. *State,* 139 Ark. 13.

After appellant closed his case, the State called several witnesses in rebuttal, among others one Everett Gray, who was asked about an alleged conversation between him and appellant in regard to another robbery. The witness stated that he had had such conversation, and no objection was made to that testimony. Objection, however, was made to the next question propounded to the witness, and the prosecuting attorney withdrew the question for the time. Thereupon, the State was permitted, over appellant's objection, to recall appellant himself for the purpose of asking him concerning his

statements to witness Gray. The objection was made in the following language: "The defense closed, and he is now asking questions in rebuttal—going to open the case in order to make rebuttal testimony. We object to it." The ground of appellant's objection was, in substance, that the case should not be reopened for the purpose of allowing appellant himself to be cross-examined. The court overruled the objection, and the prosecuting attorney was permitted to ask the witness if he had not requested Everett Gray to go to one Baker and get a gun and assist in robbing a certain crap game. The appellant replied that he did not make such a request. Witness Gray was then recalled and was examined and cross-examined concerning the alleged request made of him by appellant to participate in holding up another crap game. Appellant made no objection to the introduction of the testimony of Gray. The recall of appellant as a witness for further cross-examination was a matter in the discretion of the court, and it does not appear that the discretion was abused. It was competent for the State to ask appellant on cross-examination whether or not he had requested Baker to assist in robbing a crap game on another occasion, but the State was bound by appellant's answer, and, it being a collateral matter, the State could not introduce independent testimony concerning it. There was no objection, however, to the introduction of Gray's testimony, and therefore, appellant was in no attitude to complain of the rulings of the court in admitting it.

During the progress of the trial, certain experiments were made by the attorney for the State and one of the witnesses using the gun owned by appellant and empty shells similar to the one found on the floor of the washhouse. It appears that in these experiments the gun was snapped on the empty shells in the presence of the jury. There was no objection to the experiment being thus made in the presence of the jury, but counsel for appellant objected to the introduction of the impression made on the primer of the shells in the experiment, on

the ground that the shells being empty the impression would not be the same as on a loaded shell. A long colloquy between counsel resulted, and appellant's counsel finally withdrew the objection. Certainly, no error could be assigned under these circumstances, for there was no objection made to the experiment, and the objection made to the introduction of the shells was expressly withdrawn.

It appears that after the indictment of appellant by the grand jury the gun which he is said to have used and the empty shell found on the floor of the wash-house were preserved by the sheriff and were exhibited to the jury during the progress of the trial. Before the trial certain experiments had been made by a deputy sheriff and one of appellant's attorneys, Mr. Ward, and the result of these experiments in firing the gun at a target was offered in evidence, but the State objected on the ground that the shots had been fired by one of appellant's attorneys. Thereupon appellant requested that the jury be permitted to take the gun and shells similar to the one found in the wash-house and fire at a target. The attorney for the State agreed to this suggestion, and asked that the jury be allowed to go to the wash-house and fire the gun from the spot where the man who shot Vandergeten stood, but the court refused to send the jury to the wash-house. At the close of the trial appellant renewed his request for these experiments to be made by the jury, and the court ordered it to be done. The record contains the following statement made by the court:

"Gentlemen of the jury, the sheriff has procured here the shells, all shells just like the one that was in the gun, three other shells not of the same brand, but same size shot. Now I understand the jury wants to get a shave, and in the morning before you come to court I will have the sheriff bring these shells and these targets and the gun down to the hotel, and Mr. Worsham can take you out with a tape line, and I will give written instructions here as to the distances you can fire

these shots. I have stated here that you can fire three shots from a distance of 23 feet 7 inches, three from a distance of 21 feet and 9½ inches, three from a distance of 17 feet 8 inches, and three 15 feet and 7 inches. Let the man who shoots stand on a line at a distance indicated from the target. And nobody to go with the jury making any demonstration. You can bring these targets back into court, Mr. Deputy Sheriff. And, gentlemen, you will not talk about it yourself or comment at all, and I don't want you to let anybody go with you out where it is occurring. If anybody should undertake to follow you, just suggest to them that they must not go. Now you can number each shell; number the targets the same number of shells. No harm about that. Let the record show that the defendant was present when the targets and experiments were made."

This seems to have occurred late in the afternoon, and the record shows that on the following morning when court convened the following occurred:

Counsel for appellant stated: "We wish now to introduce the shells which were fired by the jury this morning by direction of the court yesterday, and also to identify the targets made by the jury with the shells. The jury has these targets. We want these introduced as evidence."

The Court: "The jury has the targets and the shells are here, and numbered. There is no need to identify them further. They will be considered in evidence now in the case, upon your motion."

Nothing further occurred concerning this incident, and there is nothing else in the record to indicate whether appellant was actually present when the experiments were made, though it is inferable from the recitals in the record that neither appellant nor his counsel were present when the experiments were made. It is contended now that the integrity of the trial was destroyed by permitting the jury to make these experiments outside of the court room and in the absence of the court and in the absence of appellant himself. It is.

however, affirmatively shown in the record that all that was done was at the specific request of appellant himself. He was given the opportunity to be present if he so desired, and the next morning, when the results of the experiments were brought in, counsel for appellant made the specific request that they be introduced to the jury for their consideration. The conduct of the court and jury was induced by the appellant himself, and this makes a case of invited error. If there was error committed, it was at appellant's own request, and he took advantage of all that was accomplished in that portion of the proceedings. Under those circumstances, appellant is in no attitude to complain. The constitutional right to have the tests made in his presence, and in the presence of the court, was expressly waived. *McVay v. State,* 104 Ark. 629; *Davidson v. State,* 108 Ark. 191; *Scruggs v. State,* 131 Ark. 320.

We find no error in the proceedings, and the judgment is therefore affirmed.

HART, J., (dissenting). Judge HUMPHREYS and myself think that the learned trial judge had the right idea of the law when he at first announced that the jury would not be permitted to go to the scene of the killing and experiment by shooting loaded shells in the shotgun charged to have been the one used by the defendant in the commission of the homicide, and that reversible error was committed by afterwards allowing them to make such experiments in the absence of the presiding judge.

Our Constitution guarantees that every person accused of a crime shall have a speedy and public trial and shall not be deprived of liberty or life without due process of law. These provisions imply that the trial shall be conducted in open court and under the protection of the court. The only power that gives efficacy to these constitutional guarantees is the trial court. The trial judge is not only an essential part of the court but he is the controlling part of the court.

This court has never before announced a principle of law from which it could be deduced that the trial judge

could be absent during the taking of evidence in a case where the life of a human being depends upon the issue.

It has been well said that his immediate presence tends to preserve the legal solemnity and security of the trial and upholds the majesty of the law. The guilty as well as the innocent are entitled to be tried according to law in the immediate presence of the trial court, and this cannot be done where evidence is taken by the jury in the absence of the court and at another place than where the court is authorized by law to be held. Heretofore the court has gone no further than to hold that the defendant might waive his constitutional right to be confronted by the State's witnesses and his statutory right to be present at the trial during the whole of its progress.

In *Davidson* v. *State,* 108 Ark. 191, the court held that the defendant might waive his personal presence when the verdict was returned.

It is true that in *McVay* v. *State,* 104 Ark. 629, the court held that the defendant might waive the fact that the trial judge, during the argument of counsel in a capital case, absented himself from the court for a few minutes where it was affirmatively shown that no misconduct occurred during such absence. The court, however, assigned as a reason for so holding that the argument of counsel might be waived altogether, and that, if the parties had the right to waive argument of the case, they might waive the presence of the court during the portion of the argument where it was affirmatively shown that no prejudice resulted to the defendant from such course.

No such reason exists for the presiding judge being absent while testimony was being taken. The defendant was indicted and tried for murder in the first degree. The jury returned a verdict of guilty of murder in the first degree and fixed the punishment of the defendant at life imprisonment in the State penitentiary.

Our statute provides that the jury shall, in all cases of murder on conviction of the accused, find by their

verdict whether he be guilty of murder in the first or second degree; and that if the accused confesses guilt the court shall empanel the jury and the degree of the crime shall be found by such jury.

In construing this statute this court has held that where a defendant pleaded guilty to an indictment for murder in the first degree it is reversible error to sentence him without ordering a jury to be impaneled to find the degree of murder.    *Lancaster* v. *State*, 71 Ark. 100.

It will be noted that the statute provided that the jury shall find by their verdict whether the accused is guilty of murder in the first or second degree.

In *Capital Traction Co.* v. *Hof,* 174 U. S. p. 1, Mr. Justice Gray who delivered the opinion of the court, said:

" 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion.    Yet there are unequivocal statements of it to be found in the books."

It has been well said that one of the excellencies of a trial by jury is that the judge is always present at the time of the evidence given in it.    Therefore, under our Constitution and laws, we think that the trial judge cannot be absent while evidence is being taken during the trial of an accused indicted for murder in the first degree.

The defendant charged with murder in the first degree must be tried in open court before the court, and not before the jury sent out by the judge to gather evidence while away from the court and away from the accused.

In *Ellerbee* v. *State of Mississippi,* 41 L. R. A. 569, Judge Whitfield, who delivered the opinion of the court, said:

"If this error were merely a technical one, not vital in its nature, we would not, for that alone, reverse the judgment. But the error here is of the gravest character. It goes to the very organization and constitution of the court trying the appellant on a charge of murder. So far as the lawful power of this court can be exerted, in affirming convictions for violations of the law of the land, it shall be exerted. And mere technical errors, without intrinsic merit, when we can, after a careful and thorough examination of the whole case, confidently say that the right result has been reached, that substantial justice has been done, and that, on a new trial, no other result could reasonably be arrived at, will not avail here for reversal, in civil or criminal cases. But when the defendant has been, as here, denied a right secured to him by the Constitution and the laws of the land, in a matter going to the very constitution of the court trying him, we are compelled to reverse the case. In cases the interests of society, the stability of the laws, the due administration of justice, demand a reversal. Disregard of fundamental right in the case of the guiltiest defendant, his conviction in violation of settled constitutional and legal safeguards, intended for the protection of all, are not things which affect the particular defendant in a given case alone, but, in their disastrous and far-reaching consequences, involve, in future trials, the innocent and guilty alike, subvert justice, and disorganize society. Guilt should be punished certainly, and condignly, most assuredly; but guilt must be manifested in accordance with the law of the land. Else some day the innocent, who are sometimes called to answer

at the bar of their country, may come to find themselves involved in a common ruin, deprived of the legal trial necessary to the vindication of their innocence."

The constitutional provision that the accused must be confronted by the State's witnesses and the statutory provision that the defendant must be present at the trial are provisions for the benefit of the accused and we have held that he may waive them.

On the other hand, the provision of the Constitution that the accused is not to be deprived of his life or liberty without due process of law involves the whole public, and neither he nor the State may waive it. The difference is vital. One is for the benefit of the accused, and the other is for the benefit of society. A jury may not convict an accused unless the law and the evidence warrants the conviction. The jury is the judge of the evidence, and the court is the judge of the law. Therefore, it is necessary that both the presiding judge and the jury be present whenever any evidence in the case is taken.