McGuire *v*. State.

Crim. 3888.

Opinion delivered July 2, 1934.

*Sam Robinson*, for appellant.

*Hal L. Norwood*, Attorney General, and *Pat Mehaffy*, Assistant, for appellee.

Butler, J. The appellant was tried in the Pulaski County Circuit Court on a charge of murder in the first degree for the killing of W. G. Carter. The trial resulted in a verdict of guilty as charged, whereupon the court sentenced him to be electrocuted.

On appeal it is not contended that the evidence adduced was insufficient to justify the verdict. The evidence introduced on the part of the appellee is to the following effect: W. G. Carter and G. G. Barham were operating a filling station in Little Rock. At about 7:00 o'clock on the evening of January 8, 1934, appellant, Bill McGuire, came into the filling station and stated that he had intended holding up the place, but as they had been

so nice to him he had changed his mind. He then walked from the station and stopped a short distance away. Barham saw him return and approach a window through which he discharged a firearm, the shot from which struck Carter in the back, and he died early the next morning as a result of the wound.

One Arthur Lindsey testified that McGuire visited him on January 4th; that he stayed all night, and after he had left the next day witness discovered his Winchester rifle was missing. No one else except McGuire was at witness' house at the time the gun disappeared. This weapon was found some time after the killing in a small water course near the scene of the killing and was subsequently identified by witness as the one taken from his home during McGuire's visit to him. On examining the premises where the killing occurred, a discharged rifle cartridge was found which fitted this rifle.

Two other witnesses stated that they had seen McGuire on the night of January 8 in the vicinity of the crime and that he was carrying a Winchester rifle. McGuire was arrested at his home in Little Rock at about 10:30 o'clock on the night of the homicide, and, when arrested, was in bed. He had on his underwear which the officers discovered was wet and the clothes which he had taken off were also wet. This evidence was accepted by the jury as true and is ample to sustain the verdict.

McGuire not having employed counsel, the court appointed a lawyer to conduct his defense. One of the grounds upon which the request for reversal is based is that the court was negligent in the appointment of the attorney for the reason that he was a young and inexperienced practitioner and known to be such by the court; that he did not have sufficient ability and experience to fairly represent the defendant, and that therefore defendant was denied a fair and impartial trial such as the law contemplates.

Our attention is called to the case of *People* v. *Blevins,* 251 Ill. 381, 96 N. E. 214, where a judgment of the trial court, based on a verdict of guilty of murder was reversed because the trial judge, under a statute similar

to our own, appointed two lawyers to represent the defendant who had not been engaged in the practice longer than two years and were inexperienced in the trial of criminal cases. At the time of their appointment these lawyers protested that they were inexperienced and were overmatched by the array of able and experienced counsel for the State. It appears that there were four eminent lawyers representing the prosecution. From the opinion of the court in that case it would seem that the rules of evidence and procedure of that State were grossly violated, and from the record before the Supreme Court it concluded that the lawyers appointed by the court were totally unsuited to properly present the case of the defendant or to protect his rights during the progress of the trial. For that reason and because of the court's knowledge of the inexperience of the lawyers as gained by their protest, the Supreme Court concluded that the trial court had abused its discretion, and that the judgment should be reversed.

This question is before us for the first time. A case might be supposed where a trial court would be so negligent and arbitrary in the appointment of counsel where the defendant is unable to procure any himself, and their conduct of the trial might show such lack of ability as to warrant a reversal of the case because of manifest miscarriage of justice. The record before us, however, presents no such case. The only reason stated to show the lack of ability of counsel appointed by the court is that he had been engaged in the practice not more than thirteen months, but the extent and nature of the practice in which he was engaged during that time is not shown nor his skill in the conduct of matters intrusted to his charge. It is altogether possible that this lawyer might have had much more experience in the defense of those charged with the commission of crime and would be able to conduct the defense more skillfully than one who had been admitted to the practice for a much longer time. Indeed, an examination of the record discloses that the defense was conducted in a creditable manner, and no more errors appear than is usual in the conduct

of trials of that nature. It is seldom—and almost impossible—to make a record in a murder case without some error appearing, and that the errors appearing in this case were not more grave and prejudicial than those which have been called to our attention is a matter for which the trial lawyer is to be congratulated.

The only error complained of in the conduct of the trial was the admission of improper testimony. This testimony is found in that given by the officer Barrett. He had described the arrest and stated that the clothing of the defendant was wet at the time. In this connection he was asked, "what did he say about his clothes being wet?" The answer was, "He said he had been in a stream of water—he had been hiding out because he said he was an escaped convict from the penitentiary." There was no objection interposed to this answer, no request that it be stricken, and no instruction given to the jury to disregard it. This waived the error. "It therefore appears to be the settled rule of this court that, although in capital cases exceptions would not have to be saved, objection must be made at the time before this court will be authorized to review it, and, as to the admissibility of the testimony complained of, no objection was made at the time." *Howell* v. *State*, 180 Ark. 241, 22 S. W. (2d) 47.

Moreover, there could have been no prejudice to the defendant, for he elected to take the stand and the same evidence was brought out on his cross-examination. It is well established in this State that, when a defendant in a criminal case takes the witness stand, he is subject to the same rules of cross-examination as any other witness and can be asked about former convictions for the purpose of testing his credibility. *Hollingsworth* v. *State*, 53 Ark. 387, 14 S. W. 41; *Shinn* v. *State*, 150 Ark. 215, 234 S. W. 636; *Bieard* v. *State, ante* p. 217.

Counsel who prepared the brief for the appellant in this case and who orally argued the case did not represent the defendant in the trial below. In his excellent brief and oral argument he has called attention to a number of matters extraneous to the record which, he

contends, cast grave doubt on the guilt of the defendant and also which tend to establish the fact that his mind, on the night of the alleged homicide, was in such condition as to prevent him from forming a specific intent to take human life. These matters have been presented in a most persuasive way, but are such as should be addressed to the Governor and not to us.

We have examined the record with care and have reached the conclusion that the trial was fairly conducted, and that no prejudicial error was committed. The judgment is therefore correct, and must be affirmed.