PUTERBAUGH v. STATE.

4633                                          232 S. W. 2d 984

Opinion delivered October 9, 1950.

*George W. Shepherd* and *H. B. Thorn,* for appellant.

*Ike Murry,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

HOLT, J. An information (based on Ark. Stats. 1947, § 41-3210) charged that Puterbaugh did "unlawfully and feloniously and knowingly accept, receive, levy and appropriate gold, silver and paper money, lawful money of the United States of America, without consideration, from the proceeds of the earnings of Jewel Zornes, a female, then and there engaged in prostitution, against the peace and dignity of the State of Arkansas." A number of witnesses, some of whom were admittedly prostitutes, testified in behalf of the State. Appellant operated a hotel in North Little Rock. The testimony of these women, most of whom had rooms in the hotel, was to the effect that they had an understanding or agreement with appellant that when they picked up a man and took him to the hotel for immoral purposes, appellant would charge $2.50 for the use of the room; on the other hand, if appellant obtained a man and then assigned one of the girls to the room, appellant's fee was one-half of her earnings. A jury found appellant guilty of pandering and fixed his punishment at two years in the State penitentiary. From the judgment is this appeal. For reversal, appellant first questions the sufficiency of the evidence.

Jewel Zornes testified that she first met appellant in May, 1949, at the hotel in question, where she was staying at the time; that she entered into an agreement with Puterbaugh, who was managing the hotel, to stay there and share her earnings as a prostitute with appellant. She

testified: "Q. Did you have dates with men up there? A. If we rented the room, we was to give him $2.00. Q. $2.00 out of every $5.00 you made? A. That's right. Q. Tell the jury the procedure in which men were taken up there? A. Well, if we would go down stairs and talk to men and bring them up there— Q. Downstairs? A. Yes, in the cafe, we would give the manager, Mr. Puterbaugh, $2.50 for the room and my room was No. 3 and Violet Baker's was No. 23 and Betty's was No. 1—that was understood—we walked our men by and I did the paying— I paid Puterbaugh $2.00 or $2.50 for the room. Q. That was for rent? A. Yes, sir, and if he rented the room and called us on a date, we gave him half of what we made. Our walk-up dates didn't register." She further testified that she worked under the above arrangements with appellant from May until July, 1949, and that she had dates with men on July 8 and shared her earnings with appellant, and that there were four other prostitutes in the house, that she did not remember how much money she paid appellant. "Q. Jewel, have you any idea how much money you paid the defendant for having dates with men? A. I would like to get one thing clear—those deposits I made that I had slips for, they were not on dates. We saved money from time to time and put it up every two or three weeks. Those others was just $2.00 or $3.00 to $4.00 and $4.50 or maybe $5.00, according to how much we gave him and there wasn't no receipt on that."

Betty Joe Clark, who had a similar arrangement with appellant, testified in effect corroborating Jewel Zornes. There was also testimony given by the other women of a corroborating nature.

This evidence was ample to support the jury's verdict. "It is too well settled for dispute that, if there is any substantial evidence to support the verdict, we must permit it to stand, and in determining this question, we must view the evidence in the light most favorable to the State * * *." *Padgett v. State,* 212 Ark. 716, 207 S. W. 2d 719. True it is that appellant produced testimony tending to contradict the State's evidence; however the jury elected to believe the testimony offered by the

State, which, as indicated, was ample to support the verdict.

Appellant next contends that the Court erred in permitting the following question and answer propounded to State's witness Gillespie: "Q. Was there anybody up there guarding the front and back doors against the law? A. Yes, sir."

There was no error in the admission of this testimony for the reason that testimony (in effect the same) on this very point had been previously introduced without any objection whatever on the part of the defendant. Witness Jewel Zornes testified: "Q. Were there any men around there guarding the front and back entrances to the place? A. After they turned the heat on, when they came up there every night for a week, he put Paul Allen on the back and Pat Baker in front and he stayed in the hall in order to get us out if the law did come up there." *Gordon* v. *Town of DeWitt,* 106 Ark. 283, 153 S. W. 807.

Appellant next argues that the trial court erred in admitting over his objection the following question propounded to officer Gilbert and his answer: "Q. What is the reputation of that place (Pulaski Hotel)? A. I would say it was bad. It has a reputation as a hang-out for prostitutes and also whiskey on Sunday." This very question appears to have been decided adversely to appellant's contention in *Cole* v. *State,* 156 Ark. 9, 245 S. W. 303. We there held (Headnote 3): "In a prosecution of a hotel keeper for receiving earnings of a prostitute rooming at the hotel, testimony showing the reputation of the hotel was admissible."

Finally, appellant contends that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence under Ark. Stats., 1947, § 43-2203, Sub-section (6)—"Where the defendant has discovered important evidence in his favor since the verdict." The record discloses that after the trial some of the prostitutes who testified on behalf of the State, with the exception of Betty Joe Clark and Jewel Zornes, made affidavits and testified in person when appellant's motion for

a new trial was being considered by the trial court, that their testimony given at the trial was false and was given under duress, coercion and threats. The record further reflects, however, that witnesses Jewel Zornes and Betty Joe Clark refused to recant or change the testimony which they gave at the trial. Their testimony alone, which the jury evidently believed, was sufficient to support the verdict. In *Little* v. *State*, 161 Ark. 245, 255 S. W. 892, we held (headnote) : "Criminal Law—New Trial —Recantation of Testimony.—In a prosecution for aggravated assault committed on a baby, in which there was testimony, aside from that of the child's mother, sufficient to sustain conviction, and, in which it appeared, on defendant's motion for new trial, based on the mother's affidavit recanting her testimony that defendant had beaten the child, that the mother, since the trial, had come under the defendant's influence, a denial of the motion for new trial was not error."

There is another reason that no error was committed in this regard. In the circumstances here, in considering appellant's motion for a new trial, it was within the trial court's discretion to determine what witnesses told the truth while testifying, and no abuse of this discretion accorded the trial court has been shown. This court, in *Tucker* v. *State,* 176 Ark. 1206, 2 S. W. 2d 61 (not reported in Arkansas reports) held: (Headnote)—Refusal of new trial for retraction of corroborated testimony of accomplice who was state's witness held not abuse of discretion.

"In prosecution for setting up a still, refusal of new trial for newly discovered evidence on account of accomplice's subsequent retraction of testimony as state's witness *held* not abuse of discretion, where testimony of accomplice was in part corroborated and accomplice had been confined in jail and had access to and conversations with defendant since trial; question whether or not witness told truth when on witness stand being within discretion of trial court."

And in the body of the opinion it was said: "So it should be stated here the trial court had all sufficient

reasons for overruling the motion on the ground of newly discovered evidence and was fully justified, it occurs to us, in his opinion that the witness Brannon told the truth when he was on the witness stand. At least, whether witness Brannon did swear the truth or not while on the witness stand was in the discretion of the trial court to determine under the facts of this record. We cannot say that the trial court abused its discretion in overruling appellant's motion for a new trial.''

Finding no error, the judgment is affirmed.

DUNAWAY, J., not participating.