Montaque *v.* State.

4659                          242 S. W. 2d 697

Opinion delivered October 8, 1951.

*Everard Weisburd,* for appellant.

*Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellee.

HOLT, J. A jury found appellant guilty of the crime of involuntary manslaughter and fixed his punishment at a term of three years in the penitentiary and a fine of $1,000. From the judgment is this appeal.

The information was based upon the following sections of the statute: (Ark. Stats., 1947, § 41-2207) *"Manslaughter defined.* Manslaughter is the unlawful killing of a human being, without malice express or implied, and without deliberation." "Section 41-2209. *Involuntary manslaughter defined.* If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter. Provided further that when the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless, willful or wanton disregard of the safety of others, the person so operating such vehicle shall be deemed guilty of involuntary manslaughter."

1.

Appellant first challenges the sufficiency of the evidence to support the jury's verdict.

October 7, 1950, Mr. M. W. Clifton, while driving his Plymouth sedan automobile from Memphis, Tenn., west on Highway 70 near Lehi, Ark., about midnight, in company with his wife, baby and three relatives, collided with a Cadillac automobile driven by appellant. There was evidence that at the time of the mishap Clifton was driving carefully at about a speed of thirty-five miles per hour, on the right side of the highway westward. It had been raining. As appellant approached from the west, traveling about forty-five miles per hour, he drove his

car to the left to pass a car immediately in front, but Clifton's approaching car was so near that appellant, in attempting to pull back within the line of traffic on his side of the highway, skidded into Clifton's car, resulting in great damage to both cars and Mrs. Clifton's death. There was evidence that appellant had been drinking intoxicating liquor.

Under our well established rule, we must consider the evidence in the light most favorable to the State, and if substantial, we must permit the jury's verdict to stand. *Padgett* v. *State,* 212 Ark. 716, 207 S. W. 2d 719, and *Puterbaugh* v. *State,* 217 Ark. 686, 232 S. W. 2d 984.

Appellant offered evidence tending to contradict that offered by the State. However, all conflicts in the testimony were determined against appellant by the jury. The evidence was ample to support the verdict.

## 2.

Next, appellant insists that the cause should be reversed for the reason that "the defendant (appellant) did not get a fair trial because he was required to select a jury from a jury panel, who, immediately prior to his trial had heard him vigorously denounced and his credibility violently attacked and was thereby prejudiced against him," contrary to his constitutional rights guaranteed to him by the Fourteenth Amendment to the Constitution of the United States and Art. 2, § 10 of our own Constitution.

The record reflects that immediately preceding the trial of appellant, a jury of the regular panel had convicted James Thompson of an assault with a deadly weapon on Montaque (appellant in the instant case) who was the principal prosecuting witness for the State against Thompson, and for a similar assault on appellant, (both cases being tried together). This jury assessed Thompson's total punishment on the two charges at a term of two years imprisonment in the county jail and a fine of $1,500. The Montaque case was called for trial immediately upon the conclusion of the Thompson case and the jurors in that case made them-

selves available for *voir dire* examination for service in the Montaque case. During the selection of the jury in the Montaque case, the court, out of the jurors' hearing, made the following statement: "At the time of the calling of these jurors named for *voir dire* examination, counsel for the defendant moved that they be excluded from the panel and that they not be called for examination on the ground that they were members of the jury which tried the case of State against James Thompson and that by reason of their participation in that case would be ineligible to serve as jurors in the present case, citing as reasons for their ineligibility the following:

"(1)  That in his argument to the jury in the case of State of Arkansas versus Thompson one of the counsel for the defendant, James Thompson, had characterized the present defendant, Freeman Montaque, as a 'Big Negro in West Memphis,' 'one of the biggest slickers that ever came into this courtroom,' 'a liar,' 'a Negro who drove a big Cadillac and went around all dressed up in fancy clothes' and that the present defendant, Freeman Montaque, 'was going to take all of the money of his present wife and then go looking for another.' The above jurors on their *voir dire* examination, when these things recited above were called to their attention recited in response to questions that they had from the previous trial formed no opinions as to the credibility of Montaque as a result of that trial, were neither prejudiced in his favor or in favor of the State, nor would they be in the present trial, that they could try the present case impartially, giving to the defendant and the State of Arkansas a fair hearing, and that they would base their verdict in this case solely on the evidence and instructions of the Court. In the course of the *voir dire* examination of the entire panel the defendant exercised seven (7) pre-emptory (sic) challenges and the State exercised two. At the time that the members of the petit jury of the case, State of Arkansas against James Thompson, were called for *voir dire* examination the defense had exhausted six (6) of its pre-emptory (sic) challenges. The Court refused to quash the remaining members of

the panel, that is those members who were on the Thompson petit jury, to which ruling of the Court the defendant objects and excepts."

The trial court is given a large discretion in determining the bias or prejudice of a juror as affecting his qualifications to serve in any particular case. In *Lane* v. *State*, 168 Ark. 528, 270 S. W. 974, we held (Headnote 2): "The question of the impartiality of the jury, as guaranteed by the Constitution, Art. 2, § 10, is a judicial question of fact within the sound discretion of the trial court."

Jurors must be presumed to possess the qualifications required under §§ 39-208 and 39-206 of the statutes (Ark. Stats., 1947) and that is "persons of good character, of approved integrity, sound judgment, and reasonable information." We find no abuse of the trial court's discretion here. The jurors appear to have been carefully examined on their *voir dire* as to possible bias or prejudice against appellant and each answered that he had none. Of strong significance is the fact that those members from the Thompson jury who were accepted on the Montaque jury convicted Thompson for assaulting Montaque in spite of the rather severe castigation of Montaque by defense counsel in that trial. We find no error.

3.

Appellant further argues that the court committed error "in permitting the prosecuting attorney to ask the defendant whether or not he had been arrested on a traffic violation in Forrest City and whether or not he had ever been arrested on a charge of disposing of mortgaged property."

Appellant's position is untenable for the reason that the alleged error was invited by appellant. The record reflects that after appellant took the stand in his own behalf, his counsel questioned him as follows: "Q. Have you ever been convicted of violating a traffic ordinance or regulation or statute? A. I wouldn't say I had been convicted. I had an accident in Little Rock, on Broad-

way. I paid it. I didn't know. I newly started driving an ambulance and I up and paid it. He said, 'You owe $14.' And I up and paid it. Q. When was that? A. 1945. Q. Have you been arrested since then? A. No. Q. Have you been arrested by any county officers, local officers or State troopers since you have been in West Memphis? A. No, sir.''

On cross-examination of appellant, appellant says in his brief: ''The prosecuting attorney asked the defendant (appellant) this question. 'In Little Rock were you arrested for disposing of mortgaged property?' Appellant's attorney objected to this question then (Tr. p. 121) and again (Tr. p. 122) and asked that the question be stricken from the record. Appellant was never required to answer the question, but the mere fact that the question had been asked was certainly prejudicial to him. . . .

''The same is true of the question asked by the prosecuting attorney on page 122 of the transcript. He asked, 'I will ask you whether or not you were arrested on a traffic violation in Forrest City about a month before this wreck happened.' ''

The general rule is well established that where an accused takes the stand in his own behalf, he subjects himself to the same rules of cross-examination as any other witness. *McGuire* v. *State,* 189 Ark. 503, 74 S. W. 2d 235; *Peterson* v. *Jackson,* 193 Ark. 880, 103 S. W. 2d 640.

Counsel for the State had a right to question appellant on cross-examination as to prior arrests, in the circumstances, in an effort to show that he had not truthfully answered the above questions propounded by his own counsel on direct examination. The Court, therefore, properly admitted this testimony as affecting appellant's credibility and the weight to be given his testimony.

## 4.

Appellant also assigns as alleged error, the refusal of the Court to give one of his instructions (No. 5) to

which he specifically referred in his motion for a new trial. This requested instruction does not appear in the bill of exceptions nor do the facts upon which the assignments were based. No objection was made or exceptions saved to the action of the Court in refusing this instruction.

In *McFadden* v. *A. B. Richards Medicine Company*, 170 Ark. 1011, 282 S. W. 353, we said: "It is well settled in this State that exceptions to the action of the trial court in giving or refusing instructions must be made during the trial and brought into the record by bill of exceptions. It is not sufficient to merely assign the giving or refusing of instructions as grounds for a motion for a new trial. *De Queen & Eastern Rd. Co.* v. *Pigue*, 135 Ark. 499, 205 S. W. 888; and *Martin* v. *Duke*, 156 Ark. 54, 245 S. W. 173," and in *Thompson* v. *State*, 130 Ark. 217, 197 S. W. 21, we said: "The facts upon which the assignment of error are based must be set forth in a bill of exceptions, as the motion for new trial operates only as assignment of error and not as an authoritative narrative of the incidents of the trial."

Appellant next contends that there was error in the Court's refusal to give the following requested instruction: "You are instructed in order to find the defendant guilty of involuntary manslaughter you will have to find that he was guilty of a greater degree of negligence than would cause him to be civilly liable."

This instruction appears to have been fully covered by the court in the following instruction which was given without objection. "The phrase 'reckless, willful, or wanton disregard for the safety of others,' as used in the statute read to you in these instructions requires that the actions of the defendant constitute criminal negligence rather than ordinary negligence, which is characterized by a failure to use that degree of care exercised by ordinary prudent persons, and the phrase implies something more than mere inadvertence or misadventure. Criminal negligence indicates a reckless disregard of consequences, or a needless indifference to the

rights and safety of others with a reasonable foresight that injury would probably result. It is a recklessness or indifference incompatible with a proper regard for human life."

The Court was not required to multiply its instructions on a particular issue. *Wallin* v. *State*, 210 Ark. 616, 197 S. W. 2d 26.

Other alleged errors have been considered and found to be without merit.

Affirmed.