CASTLE *v.* STATE.

4909                                                        316 S. W. 2d 701

Opinion delivered October 13, 1958.

*Tom Kidd, George E. Steel* and *Wm. M. Stocks*, for appellant.

*Bruce Bennett, Atty. General,* and *Bill J. Davis, Asst. Atty. General,* for appellee.

J. SEABORN HOLT, Associate Justice. On a charge of wife and child abandonment appellant Castle was convicted by a jury and his punishment assessed at three years in the Arkansas State Penitentiary. This appeal followed.

For reversal appellant first earnestly contends that the trial court erred in permitting the state to amend the information after the jury had been selected and sworn. We do not agree. The information as originally drawn charged that Castle "did unlawfully, wilfully and feloniously desert his wife and seven minor children under the age of sixteen years and did fail, refuse and neglect to support said children and did flee the State of Arkansas." As amended it charged that Castle "did unlawfully, wilfully and feloniously desert his wife and seven minor children under the age of sixteen years in destitute circumstances and did flee the State of Arkansas." Our statutes under which the charge was based provide: Arkansas Stats. 1947, Sec. 41-204: "When a man, without cause, abandons or deserts his wife, or legitimate minor child under the age of 16 years — in destitute or necessitous circumstances, or wilfully neglects or refuses to provide for the support and maintenance of the wife or child, he shall be imprisoned in the county jail or on the county farm for not more than six (6) months, or fined not less than fifty ($50) nor more than five hundred ($500) dollars, or both." Sec. 41-205. "If such person after leaving his wife or child

leaves the State of Arkansas, he is guilty of a felony and shall be imprisoned in the penitentiary for a period of time of not less than one (1) year nor more than five (5) years.''

As indicated, defendant was convicted on the charge as amended. Our statutes, Ark. Stats. 1947, Sec. 43-1008, further provide that an indictment must be direct and certain as regards: ''First, the party charged. Second, the offense charged. Third, the county in which the offense was committed. Fourth, the particular circumstances of the offense charged where they are necessary to constitute a complete offense. (Crim. Code, Sec. 123; C.&M. Dig., Sec. 3012; Pope's Dig. Sec. 3834.)'' Also, Sec. 43-1006 provides: ''Contents of indictments. —The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. It shall not be necessary to include statement of the act or acts constituting the offense, unless the offense cannot be charged without doing so. Nor shall it be necessary to allege that the act or acts constituting the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but the name of the offense charged in the indictment shall carry with it all such allegations. The State, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction.'' Sec. 43-1024 sets out the method by which an indictment or information may be amended in this l a n g u a g e , ''The prosecuting attorney or other attorney representing the State, with leave of the court, may amend an indictment, as to matters of form, or may file a bill of particulars. But no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged.'' We said in *Underwood* v. *State,* 205 Ark. 864, 171 S. W. 2d 304, that this section, Sec. 43-1024, (Act 3 of 1936) was enacted . . . ''for the very purpose of simplifying procedure in criminal cases, and eliminating some of

the technical defenses by means of which criminals had often in the past escaped punishment for their crimes."

We hold that the amended information did not change the nature of the offense charged, since the willful desertion of appellant's wife and children and that he had fled the State of Arkansas, were still charged in the amended information. The amendment, as indicated, only added "in destitute circumstances" to describe the condition of appellant's family and struck out the charge "and did fail, refuse and neglect to support said children." We think appellant was sufficiently put on notice of the nature of the charge on which he was called on to defend, that is, the crime of wife and child abandonment in destitute circumstances. It is difficult to see how he could have been misled or prejudiced.

Next appellant challenges the sufficiency of the evidence. Again we do not agree. Appellant, the father of seven minor children, while his wife was in the field working to help support the family, without as much as telling his wife of his intentions, and after a month's secret planning, wilfully left his family, and in company with his neighbor's wife, Ercile Mae Thompson, who was herself the mother of three minor children, drove in his car to Floydada, Texas. Appellant and Mrs. Thompson lived together in a tourist court in that Texas town for approximately one month and until they were arrested and returned to Arkansas. Further evidence bearing on appellant's intention to abandon his family was the testimony of Mrs. Thompson and appellant that Mrs. Thompson, after she and appellant had reached Texarkana, Arkansas, on their journey to Texas, got out of the car and walked across the state line. A fair inference it seems to us that the jury might have drawn from this act on her part, was that she was attempting to avoid violation of what is commonly known as the Federal White Slave Traffic Act (Title 18 USCA Sec. 2421). On this issue of sufficiency of the evidence, appellant says: "It is true that the state proved the defendant had left the state, that he has taken another woman with

him, and that his family was in destitute and necessitous circumstances, a fact proved by detailed and numerous testimony . . ." Viewing the evidence in the light most favorable to the state, as we must do, we must affirm the judgment if we find any substantial evidence to support it. We hold that the evidence was substantial and sufficient.

Finally, appellant contends that the trial court erred in permitting the state, over appellant's objections, while cross examining appellant to ask him whether he had paid certain fines in a justice of the peace court in Nashville, Arkansas. On this point the record reflects the following testimony of appellant on cross examination: "And you didn't waste your money? A. No. Q. Did you pay a fine in Nashville for public drunkenness just prior to your leaving here? A. (no answer) Q. You did, didn't you? A. I don't recall it was for public drunkenness. Q. What was it for? A. I don't know. Q. Did you pay a fine to the city? A. Yes. —Did you pay a fine for disturbing the peace? A. No. Q. Are you just as sure of that as you are of everything else you have testified to? A. Yes, sir. Mr. Kidd: If the court please, that's not proper cross-examination. If he's going to ask him along that line, I want him made his own witness. He isn't pursuing proper cross-examination. The Court: I believe you invited it, Mr. Kidd, by asking if he spent his money properly. Now, he's attempting to show that he probably didn't do that. Mr. Kidd. Save our exceptions. Q. (cont'd.) I will ask you if you are sure you didn't pay a fine — A. I never paid a fine for disturbing the peace in my life. Q. Did you pay a fine in Howard County two months before you left for Texas? A. I think I did. Q. What was it for? Do you know? A. No, sir. Q. It was for violation of the criminal law, wasn't it? A. Yes, I suppose it was. Q. Did you on the 24th of April, 1957, pay a fine of $15.00 for public drunkenness, to Howard County? A. What's the date? Q. The 24th of April, 1957. A. I paid one back there somewhere."

We think the above examination of appellant was within the scope of proper cross-examination as affecting defendant's credibility as a witness. It is our well established rule that when the defendant takes the witness stand in his own behalf the same rules apply to him as to any other witness. We said in *Shinn* v. *State,* 150 Ark. 215, 234 S. W. 636, "Appellant was asked all sorts of questions about having been a gambler and about other offenses and immoralities. This was merely for the purpose of testing his credibility and was admissible as such. This court so decided in the case of *Hollingsworth* v. *State,* 53 Ark. 387. This was with regard to a witness other than the accused himself, but we have since then frequently held that the same rule applies to a defendant in a criminal prosecution when he takes the witness stand in his own behalf. *Ware* v. *State,* 91 Ark. 555; *Hunt* v. *State,* 114 Ark. 239; *Nelson* v. *State,* 139 Ark. 13." Also see *Hays* v. *State,* 219 Ark. 301, 241 S. W. 2d 266.

Finding no error, the judgment is affirmed.